Ex Parte Joe Arvin, Petitioner, v. James L. Williams, Sheriff of Jackson County, Missouri, Respondent.—112 S. W. (2d) 113.

Kansas City Court of Appeals. December 29, 1937.

*Clif Langsdale* and *John M. Langsdale* for petitioner.

*W. W. Graves* and *Russell Boyle* for respondent.

REYNOLDS, J.—Joe Arvin filed his verified petition in the office of the clerk of the Kansas City Court of Appeals in vacation for a writ of *habeas corpus*, seeking to be discharged from imprisonment in the county jail of Jackson county, Missouri, and from the custody of the respondent J. L. Williams as sheriff of said county. The same was presented in vacation of the court to the writer, one of the judges of said court, who granted the writ.

In obedience to such writ, the respondent has made return to the same, which discloses that the petitioner is in his custody and is being imprisoned by him in the county jail of Jackson county, Missouri, under a judgment and order of commitment thereunder made by the Circuit Court of Jackson County for contempt in refusing to answer certain questions propounded to him by the grand jury of Jackson county, on December 17, 1937. A certified copy of the judgment and order of the court committing the petitioner to the custody of the respondent sheriff, together with a certified copy of the commitment thereunder, was attached to and made a part of the respondent's return.

The order of commitment is as follows:

"State of Missouri ⎱ ss.
"County of Jackson ⎰

"In the Circuit Court of Jackson County, at Kansas City, Missouri. Division Number 9. Designated by the rules of the Circuit Court as Criminal Division A.

"Be It Remembered, That heretofore, to-wit, on the 17th day of December, 1937, at the regular November Term, 1937, begun and held at the Court House, in Kansas City, County and State aforesaid, the following among other proceedings were had by said Court, to-wit:

"Now on this day comes into Court the Grand Jury heretofore empannelled and sworn to-wit: Cass W. Browning, R. R. Choplin, Bryson Ayers, Louis Oppenstein, T. H. Mastin, H. H. Halverson, Frank J. Horn, Leo V. Burnett, F. W. Pendleton, Bert Lyon, Taylor S. Abernathy and Thomas J. Leary, accompanied by Joe Arvin, a witness duly summoned by said Grand Jury, and reports to the Court in writing that they have under consideration matters having to do with certain bombings of certain laundries in Kansas City, Jackson County, Missouri, and the fixing of certain laundry prices in connection with laundries, and that the said Joe Arvin was duly summoned as a witness to appear before said Grand Jury as required by the statutes of this State and that inquiry was made of him as follows and the following questions were propounded to the said witness, all of which he had refused to answer: That the questions propounded and the answers of said Joe Arvin thereto were as follows:

" 'Q. Did you have a minimum price list printed and circulated among laundry operators here in Kansas City which prices were to go into effect on September 13, 1937? A. I refuse to answer on the ground that it might incriminate me. I stand on my constitutional rights.

" 'Q. Have you made attempts to regulate laundry prices among operators here in Kansas City? A. I refuse to answer on the ground that it might incriminate me.

" 'Q. Have you had any conferences with Arch Long of the Long-Hall Laundry relative to fixing laundry prices here in Kansas City? A. I refuse to answer on the ground that it might incriminate me.

" 'Q. Have you ever had any conferences with James Johnston of the Ford-Ideal Laundry relative to the fixing of laundry prices here in Kansas City? A. I refuse to answer for the same reason as given to the other questions asked.

" 'Q. Have you ever had any conferences with Elmo Fischer of the Silver Laundry relative to the fixing of laundry prices here in Kansas City?'

"(The certified copy of the judgment and order of commitment, attached to the return and in evidence upon the hearing, shows that the petitioner also refused to answer the last question above noted on the ground that the answer thereto would incriminate him.)

"Thereupon the Court in the presence of the Grand Jury and said witness, Joe Arvin, did determine that the said witness was bound to answer the questions aforesaid, because they were proper and would not tend to incriminate him, and both the Grand Jury and the said witness, Joe Arvin, were informed of the Court's decision, and thereupon the said Grand Jury, with the said witness, retired and afterwards came into Court with said witness and informed the Court in writing that the said witness refused to answer said questions, and being interrogated by the Court in regard thereto the said witness informed the Court that he would not answer said questions in the presence of said Grand Jury, and thereupon the Court did order and adjudge that the said witness Joe Arvin was guilty of a contempt of this Court on account of his refusal to testify as aforesaid and does adjudge that he, the said Joe Arvin, be committed to the jail in Jackson County, Missouri, for such contempt, as provided by the laws of the State of Missouri, and it is further ordered and adjudged by the Court that the clerk of this Court immediately issue and deliver a proper commitment under this order directed to the sheriff of Jackson County, Missouri, commanding and requiring him to commit the said Joe Arvin to the jail of the County aforesaid and him there safely keep until the said witness Joe Arvin answers the questions which he had heretofore contemptuously and contumaciously refused to answer and still refuses, or until he be otherwise discharged by due process of law.

"WHEREFORE it is ordered and adjudged by the Court that the said Joe Arvin be confined to the County Jail as aforesaid for refusing to answer the questions asked of him by the Court and the Grand Jury as aforesaid and that the State of Missouri have and recover of the said defendant all costs herein and have there for execution.

"It is further ordered by the Court that the said defendant be remanded to the custody of the Sheriff of Jackson County, Missouri, the officer in charge of said jail therein to be confined as aforesaid."

The petitioner insists that he is entitled to be discharged from the custody of the respondent sheriff and from imprisonment under such judgment, order, and commitment, for the reason that they are unlawful; that such judgment, order, and commitment violate the petitioner's rights as guaranteed by the Fifth Amendment to the Constitution of the United States and that they violate the petitioner's rights as guaranteed by article 2, paragraph 23 of the Constitution of the State of Missouri, in that the petitioner is being deprived of his liberty without due process of law.

Section 23 of article 2 of the Constitution of this State provides: "No person shall be compelled to testify against himself in a criminal cause;" and the fifth amendment to the Constitution of the United States, among other things, says: "Nor shall any person . . .

be compelled in any criminal case to be a witness against himself." [Ex parte Gauss, 223 Mo. 277, 122 S. W. 741, l. c. 741.]

The petitioner contends that, by virtue of the provisions of either of said Constitutions, he was not guilty of contempt of the Circuit Court of Jackson County when he refused to answer the questions propounded him by the grand jury, for the reason that his answers thereto would have incriminated him and that he was not required to answer the same but that he, as a witness, had immunity to refuse to answer the same without being in contempt and that such constitutional provisions in each instance afforded him protection in refusing to make answer to such questions upon such grounds and that the circuit court exceeded its jurisdiction in finding him guilty of contempt upon the record and in committing him therefor.

The question thus raised by the petitioner is not a new one. It has been several times ruled by the Supreme Court of the United States, so far as concerns the provisions of the Constitution of the United States, and by the Supreme Court of this State and the other appellate courts thereof, so far as concerns the provisions of the State constitution, in harmony with the contentions of the petitioner. [Ex parte Gauss, *supra*; In the matter of the trial of Aaron Burr, 1 Burr's Trial 244, 25 Fed. Cas. 38, l. c. 40, No. 14692E; Counselman v. Hitchcock, 142 U. S. 547, 12 S. C. 195, 35 Law Ed. 1110; State v. Young, 119 Mo. 495, 24 S. W. 1038; State v. Simmons Hardware Co., 109 Mo. 118, 18 S. W. 1125, 15 L. R. A. 676; Ex parte Carter, 166 Mo. 604, l. c. 614, 66 S. W. 540, 57 L. R. A. 654; Ex parte January, 295 Mo. 653, 246 S. W. 241, and other cases which it is unnecessary to cite.] It is sufficient to say that the opinion by Chief Justice MARSHALL in the Burr Case has been generally, if not universally, followed in all jurisdictions, including the State of Missouri.

In the case of State v. Young, *supra,* it is held that the immunity afforded a witness by the constitution is broad enough to protect him against self-incrimination before any tribunal in any proceeding; that the constitution means more than the protection of the accused on his final trial when his rights are scrupulously guarded by the courts and that it clearly protects him from being forced to testify against himself before the coroner, the grand jury, or the justice in his preliminary examination.

It is said by the Supreme Court in Ex parte Carter, *supra,* l. c. 614 of 166 Mo.:

"It is a reasonable construction of the constitutional provision, that the witness is protected from being compelled to disclose the circumstances of his offense, or the sources from which, or the means by which, evidence of its commission, or of his connection with it, may be obtained, or made effectual for his conviction, without using his answer as direct admissions against him."

The doctrine of the Young and the Carter cases was approved by Judge GANTT in Ex parte Gauss, *supra*.

In the Burr Case, Chief Justice MARSHALL said:

"If the question be of such description that an answer to it may or may not criminate the witness, according to the purport of that answer, it must rest with himself, who alone can tell what it would be, to answer the question or not. If, in such a case, he say, upon his oath, that his answer would incriminate himself, the court can demand no other testimony of the fact.—According to their statement (the counsel for the United States), a witness can never refuse to answer any question, unless that answer, unconnected with other testimony, would be sufficient to convict him of crime. This would be rendering the rule almost perfectly worthless. Many links frequently compose that chain of testimony which is necessary to convict any individual of a crime. It appears to the court to be the true sense of the rule that no witness is compellable to furnish any one of them against himself. It is certainly not only a possible, but a probable, case that a witness, by disclosing a single fact, may complete the testimony against himself, and to every effectual purpose accuse himself as entirely as he would by stating every circumstance which would be required for his conviction. That fact of itself might be unavailing; but all other facts without it would be insufficient. While that remains concealed within his own bosom, he is safe; but draw it from thence, and he is exposed to a prosecution. The rule which declares that no man is compellable to accuse himself would most obviously be infringed, by compelling a witness to disclose a fact of this description. What testimony may be possessed, or is attainable, against any individual, the court may never know. It would seem, then, that the court ought never to compel a witness to give an answer, which would disclose a fact that would form a necessary and essential part of a crime, which is punishable by the laws."

The return recites that the grand jury was investigating matters having to do with the bombing of certain laundries in Kansas City and the fixing of certain laundry prices in connection with such laundries, but the witness did not limit his answers to any particular offense or offenses but stated that to answer the questions would incriminate him.

The meaning of this constitutional provision has time and again been held not to be merely a provision that a person shall not be compelled in a then-existing case against himself but that he shall not be compelled, when acting as a witness in any investigation, to give testimony to show that he himself has committed a crime.

The Supreme Court of this State has, in the Gauss case and other cases, approved the doctrine announced by Chief Justice MARSHALL, that, if the question be such that the answer thereto may or may not

incriminate the witness, it must be left with himself, who alone can tell what it would be, to answer the question and, if in such case he says upon his oath that his answer would incriminate himself, the court can demand no other testimony of the fact and has held that such rule thus announced and approved is entirely consistent with the doctrine generally held that, when the court can say as a matter of law that it is impossible that a witness would incriminate himself by answering a question one way or another, then the court can require an answer. [Ex parte Gauss, supra.] Ex parte Holliway, 272 Mo. 108, 199 S. W. 412, was a case where the Supreme Court held that, if it could be said by the court as a matter of law that the answer would not incriminate the witness, the court could require an answer and that, in default of making such answer, the witness could be adjudged in contempt and committed therefor. Such is the law in Missouri. [Ex parte Gauss, supra.]

We think that the questions propounded in this case are not such questions as the court might say as a matter of law the answers thereto would not incriminate the witness but are questions such as the witness had the right to decline to answer if, in his opinion, such answers would incriminate him. The questions were direct touching his participation in and connection with the particular offenses which were under investigation. To have answered the same would have been to furnish a link or links in the chain of testimony for his own indictment by the grand jury for such offenses and for his own conviction of such offenses when charged therewith. To hold that he must have explained all of the other testimony in the case which would be sufficient to convict him by answering the questions asked him would render the rule entirely worthless. [Ex parte Gauss, supra.]

In the Gauss case, the court quoted approvingly from People v. Mather (N. Y.), 4 Wend. 229; 1. c. 252, 21 Am. Dec. 122, as follows:

"When the disclosures he may make can be used against him to prosecute him for a criminal offense or to charge him with penalties or forfeitures, he may stop answering before he arrives at the question, the answer of which may show practically his moral turpitude. The witness knows what the court does not know, and what he cannot communicate without being a self-accuser, and is the judge of the effect of his answer, and if it proves a link in the chain of testimony, which is sufficient to convict him, he is protected by law from answering the question. If there be a series of questions, the answer to all of which would establish his criminality, the party cannot pick out a particular one, and say; if that be put, the answer will not criminate him. If it is one step having a tendency to criminate him, he is not compelled to answer."

The constitutional provisions seem to be all effective for the full pro-

tection of a witness from answering any question propounded where, in answering the same, he would incriminate himself.

Taking the facts of this case, upon the record, we say, as was said by Judge GANTT in Ex parte Gauss, *supra*, that, in our opinion—the petitioner herein having testified that he could not answer the questions asked him by the grand jury (on account of the refusal to answer which he stands committed) without incriminating himself and it not being entirely plain that his answers might not lead to a prosecution of himself so that this court might be able to say as a matter of law that it would not lead to his prosecution—the circuit court erred in committing the petitioner for contempt in refusing to answer the questions asked him and that, in doing so, it exceeded its jurisdiction.

It cannot be said as a matter of law by the court that the petitioner's answers to such questions, if required to answer them, would not have incriminated him or in some way have furnished a link in the chain of facts required to be shown to establish his connection therewith or his connection with some other criminal offense.

We are not bound in this proceeding by the judgment of the circuit court to the effect that the petitioner was bound to answer the questions propounded to him because they were proper and did not tend to incriminate him nor by its judgment in declaring that the petitioner was guilty of contempt for refusing to answer such questions nor by its judgment ordering that the petitioner be committed on account thereof. The question of the jurisdiction of the circuit court to render such findings and judgments and make such orders and to issue such commitment upon the record before it, may be inquired into by us, even to the extent of ascertaining the sufficiency of the facts before that court to justify its findings and judgment and to give it jurisdiction to make the same. [Ex parte Holliway, *supra*; Ex parte Creasy, 243 Mo. 679, 148 S. W. 914.]

We find that the facts in the record, which are all embraced in the return, were insufficient to confer jurisdiction upon the circuit court to make the findings, judgments, and orders made by it adjudging the petitioner guilty of contempt and to commit him on account of such contempt and that such court, in making such findings, judgments, and orders and in committing the petitioner upon the facts before it in the record, exceeded its jurisdiction.

The questions themselves, set out in the return, show upon their face that they seek out the personal connection of the petitioner with and his participation in the unlawful matters and transactions which the grand jury at the time had under investigation; and it is not clear that, if compelled to answer the same, his answers would not identify him or lead to his identification as an unlawful participant in unlawful matters and unlawful transactions; and to require

him to answer them is in direct conflict with the fundamental laws relied upon by the petitioner.

It is suggested that the petitioner was properly required by the circuit court to answer the questions propounded to him in that he had immunity from prosecution by reason of the provisions of section 8713, article 1, chapter 47, Revised Statutes of 1929. Clearly, such section has no application here. This is not in any sense a proceeding brought to enforce the provisions of article 1, above cited. Such section, by its express terms, applies only to proceedings brought to enforce the provisions of such article.

It has not been our purpose to declare any new law. We have done well if we have but followed the road blazed out for us by the courts of last resort in both State and nation and have declared the law as it has been written by such courts.

It is suggested by counsel for the respondent that, if the law be declared as heretofore, the grand jury cannot pursue its investigations into bombings and price fixings. Such may or may not be true; but doubtless other witnesses can be found who are not involved in a criminal way therein who might furnish evidence, direct or indirect, of bombings and the perpetrators thereof and of conspiracies to fix prices and the conspirators connected therewith.

However, whether there be or not, constitutional provisions such as those involved here cannot be frittered away at pleasure or as a matter of mere convenience and expediency for the moment. If to be frittered away in this case, then they must necessarily be frittered away in every case.

A like suggestion was made in State v. Simmons Hardware Company, supra; and Judge BARCLAY of the Supreme Court in answer thereto said (l. c. 129 of 109 Mo.) :

"It is one of the most solemn and imperative obligations devolved upon the courts to assert when needful the constitutional rights of the citizen, and we do not hesitate to discharge that duty when the occasion requires it."

However desirable the ends to be arrived at by the grand jury in its investigations, the means employed by it in subpoenaing the petitioner to come before it as a witness and the court in requiring him to answer the questions propounded over his objections that the answers thereto would incriminate him come plainly in conflict with the fundamental laws of both the State and the federal governments. The latter are the supreme law and must be observed and followed.

We are of the opinion that the petitioner, upon the facts, is entitled to his discharge under the writ; and it is so ordered that he be discharged.