STATE of Missouri ex rel. Ronald
HOWARD, Relator,

v.

Hon. Emery W. ALLISON, Judge of the Circuit Court of Pulaski County,

Missouri, Respondent.

No. 8792.

Springfield Court of Appeals.

Missouri.

Aug. 8, 1968.

J. W. Grossenheider, Lebanon, for relator.

Milton C. Clarke, Roy P. Swanson and Charles L. House, Kansas City, and Arthur B. Cohn, Waynesville, for respondent.

T. Alan Peschka, Swanson, Midgley, Jones, Eager & Gangwere, Kansas City, of counsel.

## PRELIMINARY RULE IN PROHIBITION MADE ABSOLUTE

STONE, Judge.

In this original proceeding in prohibition, relator Ronald Howard seeks to prevent respondent, as judge of the circuit court of Pulaski County, Missouri, from committing him for contempt because of his refusal to answer two questions during a hearing in said circuit court.

On April 24, 1967, Commerce Trust Company of Kansas City, as plaintiff, obtained in that court a judgment in the principal sum of $127,850.92 against Ronald Howard and Mrs. Ronald Howard, his wife, as defendants. Upon the Howards' appeal to the Supreme Court of Missouri, that judgment has been affirmed while the instant proceeding has been under submission here. See Commerce Trust Co. v. Howard, Mo., 429 S.W.2d 702 [handed down on July 8, 1968]. Not having been stayed by the filing and approval of a supersedeas bond [Rule 82.09; § 512.080], execution on the judgment was issued and returned unsatisfied during October 1967.[1] Thereafter, Commerce Trust filed its motion for examination of judgment debtors wherein it was averred, under oath, that "the defendants [the Howards], the said judgment debtors, have property subject to execution, as indicated on Exhibit 1 attached hereto and incorporated herein, which is a financial statement given to plaintiff [Commerce Trust] by or on behalf of defendants on or before April 7, 1964"; and, in obedience to the court's ensuing order, defendant Ronald Howard appeared on January 18, 1968, for examination touching his ability and means to satisfy the judgment. In the course of such examination, it was developed that the witness then lived with his wife in a "single residence" on a tract of "approximately eighty" acres about six miles west of Lebanon, Missouri. The two questions which the witness thereafter refused to answer were: "Q. Do you own an interest in that property?" and "Q. Does your wife own any interest in the property which you have described, where you live?" Each question invoked the same refusal, to wit, "I refuse to answer on the grounds that my answer might tend to incriminate me under Section 19, Article I of the Missouri Constitution [V.A.M.S.] and under the Fifth Amendment to the United States Constitution." Being directed by respondent judge to answer both questions, the witness reiterated his refusal upon the advice of counsel in open court. Whereupon, respondent declared his intention to commit relator Howard but, at the request of counsel, deferred so doing until his jurisdiction could be determined in this proceeding.

■ It has long been settled that the privilege against self-incrimination, i. e., "[t]hat no person shall be compelled to testify against himself in a criminal cause * * *", now guaranteed by Section 19, Article I, Missouri Constitution of 1945, and theretofore by Section 23, Article II, Missouri Constitution of 1875, is available to a judgment debtor being examined in a proceeding instituted and conducted pursuant to Sections 513.380 and 513.385 [State ex rel. North v. Kirtley, Mo. (banc), 327 S.W.2d 166; State ex rel. Strodtman v. Haid, 325 Mo. 1137, 30 S.W.2d 466; State ex rel. Lee v. Cavanaugh, Mo.App., 419 S.W.2d 929; Ex parte Meyer, Mo.App., 18 S.W.2d 560]; and, although until recently the like privilege against self-incrimination guaranteed by the Fifth Amendment of the United States Constitution did not afford protection against state action [Adamson v. People of State of California, 332 U.S. 46, 67 S.Ct. 1672, 91 L.Ed. 1903, 171 A.L.R. 1223; Kirtley, supra, 327 S.W.2d at 168(3)], it is now clear that such privilege may be invoked by one under examination in a state court. Malloy v.

---

[1]. All references to rules are to the Supreme Court Rules of Civil Procedure, V.A.M.R., and all statutory references are to RSMo 1959, V.A.M.S.

Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed. 2d 653 (1964); Cavanaugh, supra, 419 S.W.2d at 932(1).

The question in Kirtley, supra, 327 S. W.2d at 167, as to which the court recognized the judgment debtor's right of refusal to answer on the ground of possible self-incrimination, was "Do you now own some property, Mr. North, which is located at 'O' and Kentucky or 71 Highway and Kentucky?" And the questions as to which the judgment debtor's right of refusal to answer on the same ground was upheld in Haid, supra, 325 Mo. at 1140, 30 S.W.2d at 466–467, and in Meyer, supra, 18 S.W.2d at 561, included the following, "Mr. Meyer, do you own any property? * * * Do you own or hold any property, either real or personal?" Obviously, the questions under consideration in this case fall in the same category.

■■■ Counsel for instant respondent seek to escape the impact and authority of the above-cited cases by pointing out what they characterize as "a significant difference" between them and the case at bar, to wit, in Haid and "apparently" in Kirtley the court's order directing the judgment debtor to appear for examination was procured upon an affidavit or motion by the judgment creditor which included an averment of the second alternative ground stated in § 513.385, i. e., that the judgment debtor "has conveyed or attempted to convey his property, with a design to defraud, hinder or delay his creditors," and thus charged the judgment creditor with the commission of a misdemeanor [§ 561.550], whereas in the instant case the verified motion for examination filed by Commerce Trust, the judgment creditor, alleged only

the first alternative ground stated in § 513.385, i. e., that the "judgment debtor[s] ha[ve] property subject to execution." However, that is a meaningless distinction, for our courts have repeatedly said and conclusively demonstrated that the constitutional privilege against self-incrimination is available to a witness before any tribunal and in any proceeding,[2] and no case cited by counsel or found by us suggests that a *prior* or *pending* charge of criminal misconduct against the witness is a prerequisite to his invocation of the privilege. Furthermore, the fact that the 80-acre tract on which relator and his wife resided, to the ownership of which the two questions under consideration were directed, was not listed on the financial statement given by them to the judgment creditor, Commerce Trust, in April 1964, indeed may be "interesting to note" as respondent's counsel suggest, but nevertheless that fact does not deprive relator of his constitutional privilege against self-incrimination.

■■■ Counsel for respondent also contend that "there is no showing of any circumstances, much less any argument of any circumstances, which would indicate that answers to the questions propounded to relator would in any way incriminate him" and that, "absent such circumstances, the showing of * * * or the attempt to show such circumstances, the trial court reasonably and properly directed the witness to answer both questions * * *." The principles controlling our consideration and disposition of respondent's contention are plain and settled. In United States v. Burr, 25 Fed.Cas. No. 14,692 e, pages 38, 40, 1 Burr's Trial 244, frequently quoted with approval in our Missouri cases, Chief

---

2. State ex rel. North v. Kirtley, Mo. (banc), 327 S.W.2d 166, 167(1); State v. Burnett, 357 Mo. 106, 206 S.W.2d 345, 348(5); State v. Dowling, 348 Mo. 589, 154 S.W.2d 749, 755–756(11); In re West, 348 Mo. (banc) 30, 152 S.W.2d 69, 70(4); Ex parte Gauss, 223 Mo. 277, 282, 122 S.W. 741; State v. Young, 119 Mo. 495, 520, 24 S.W. 1038, 1045; Presta v. Owsley, Mo.App., 345 S.W.2d 649, 652; State v. Topel, Mo.App., 322 S.W.2d 160, 162(5); Ex parte Arvin, 232 Mo. App. 796, 800, 112 S.W.2d 113, 116. See Franklin v. Franklin, 365 Mo. (banc) 442, 283 S.W.2d 483, 485(4); State ex rel. Orr v. Kearns, 304 Mo. 685, 701, 264 S.W. 775, 779; Brady v. Brady, Mo.App., 71 S.W.2d 42, 46(3, 4); 98 C.J.S. Witnesses § 433, p. 244; 58 Am.Jur. Witnesses §§ 45 and 46, pp. 49–51.

Justice Marshall wrote: "[I]f the question be of such a description that an answer to it may or may not criminate the witness, according to the purport of that answer, it must rest with himself, who alone can tell what it would be, to answer the question or not. If, in such a case, he say upon his oath that his answer would criminate himself, the court can demand no other testimony of the fact. * * * Many links frequently compose that chain of testimony which is necessary to convict any individual of a crime. It appears to the court to be the true sense of the rule that no witness is compellable to furnish any one of them against himself. It is certainly not only a possible but a probable case that a witness, by disclosing a single fact, may complete the testimony against himself, and to every effectual purpose accuse himself as entirely as he would by stating every circumstance which would be required for his conviction. That fact of itself might be unavailing, but all other facts without it would be insufficient. While that remains concealed within his own bosom he is safe; but draw it thence, and he is exposed to a prosecution. The rule which declares that no man is compellable to accuse himself would most obviously be infringed by compelling a witness to disclose a fact of this description. What testimony may be possessed, or is attainable, against any individual the court can never know. It would seem, then, that the court ought never to compel a witness to give an answer which discloses a fact that would form a necessary and essential part of a crime which is punishable by the laws." See Ex parte Gauss, 223 Mo. 277, 283–284, 122 S.W. 741, 742; Cavanaugh, supra, 419 S.W.2d at 933; Presta v. Owsley, Mo.App., 345 S.W.2d 649, 652; Ex parte Arvin, 232 Mo.App. 796, 801, 112 S.W.2d 113, 116.

The appellate courts in this jurisdiction also have adopted the following statement from People v. Mather, 4 Wend. (N.Y.) 229, 252, 21 Am.Dec. 122: "The witness knows what the court does not know, and what he cannot communicate without being a self-accuser, and is the judge of the effect of his answer, and if it proves a link in the chain of testimony, which is sufficient to convict him, he is protected by law from answering the question. If there be a series of questions, the answer to all of which would establish his criminality, the party cannot pick out a particular one, and say, if that be put, the answer will not criminate him. If it is one step having a tendency to criminate him, he is not compelled to answer." See Gauss, supra, 223 Mo. at 285, 122 S.W. at 742; Cavanaugh, supra, 419 S.W.2d at 933–934; Owsley, supra, 345 S.W.2d at 652; Arvin, supra, 232 Mo.App. at 802, 112 S.W.2d at 117.

■ In sum it is said that the doctrine as formulated and announced by Chief Justice Marshall in Burr's case, supra, is "entirely consistent with the doctrine generally held" (and specifically followed in the Missouri cases) that when the court can say as a matter of law that it is impossible that the witness would incriminate himself by answering a question one way or the other, then the court can require an answer; but not otherwise. Gauss, supra, 223 Mo. at 285, 122 S.W. at 742; Cavanaugh, supra, 419 S.W.2d at 933, 934(3); Owsley, supra, 345 S.W.2d at 652; Arvin, supra, 232 Mo.App. at 802, 803, 112 S.W.2d at 116, 117. See Brady v. Brady, Mo.App., 71 S.W.2d 42, 46(4).

■ It is true that, at the hearing before respondent, no evidence was offered to indicate how answers to the two questions under consideration might have tended to incriminate relator. But respondent was in the first instance, and this court is in this proceeding, enjoined to "be sensitive to the circumstances existing and perceptive in viewing the possibilities of incrimination." Presta, supra, 345 S.W.2d at 653. And we must remain mindful that the privilege against self-incrimination is not limited to questions which might require answers completely revealing criminal guilt but extends to questions eliciting answers

which might tend to incriminate by disclosing a fact or facts constituting a link in a chain of evidence sufficient to convict. See again the pronouncements in Burr and Mather, supra, and consult Cavanaugh, supra, 419 S.W.2d at 932–934(2, 3). In this connection, we note that the two questions were directed to whether relator "own[ed] an interest" or his wife "own[ed] any interest" in the 80-acre tract and thus might have elicited information not disclosed by recorded instruments.

We have not overlooked the fact that, as counsel for respondent stress, the second question inquired concerning any interest of relator's wife, and we recognize that the privilege against self-incrimination claimed by relator was personal to himself and could not have been asserted for the benefit of, or to shield or protect, her. Rogers v. United States, 340 U.S. 367, 371, 71 S.Ct. 438, 95 L.Ed. 344, 348(2), 19 A.L.R.2d 378; State v. Ross, Mo., 371 S.W.2d 224, 228(5); 58 Am.Jur. Witnesses §§ 48 and 49, p. 52; 98 C.J.S. Witnesses § 451 (a), pp. 291 et seq. But we are cognizant also that, as relator's counsel reminds us, many married couples own their residences as tenants by the entirety and file joint income tax returns.

■ When, in the course of oral argument, relator's counsel was invited to suggest how or why the two questions were not innocuous [cf. Presta, supra, 345 S.W.2d at 653–654; Cavanaugh, supra, 419 S.W.2d at 934], he directed our attention to the areas of fraudulent conveyancing [§ 561.550] and income tax violation, commenting with respect to the latter that "there are some income tax problems at this

time presenting themselves to these judgment debtors." Upon reflection, we can visualize the distinct possibility that answers to the two questions might furnish information constituting a link in a chain of evidence leading to a criminal conviction in either of the two suggested areas. Since we are unable to say as a matter of law that relator would not have incriminated himself by answering the two questions, answers may not be compelled. See again Haid, supra, and Kirtley, supra.

■ Respondent's brief includes a third point in which it is argued that relator waived his privilege against self-incrimination by his voluntary testimony concerning the location and approximate size of the 80-acre tract. The only authority cited in support of this contention is Rogers v. United States, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344, 19 A.L.R.2d 378, in which five of the justices of the Supreme Court held, in affirming a judgment of contempt, that the witness, having already voluntarily disclosed her membership in the Communist Party and her possession of the books and records of that party, thereafter could not refuse to disclose the name of the person to whom she had delivered those books and records, since her answer could no further incriminate her. The instant situation is in no wise analogous, and Rogers is neither controlling nor persuasive here. The claim of waiver is wholly without merit. Cavanaugh, supra, 419 S.W.2d at 935–936.

Our preliminary rule in prohibition should be, and is, made absolute.

HOGAN, P. J., and TITUS, J., concur.