STATE ex rel. HARRY SHAPIRO, Jr., REALTY & INVESTMENT COMPANY, Relator,

v.

Honorable George W. CLOYD, Judge, Respondent.

No. 62505.

Supreme Court of Missouri, En Banc.

April 6, 1981.

Rehearing Denied May 11, 1981.

Bernard Sussman, Robert M. Susman, St. Louis, for relator.

Glennon T. Moran, St. Louis, for respondent.

DONNELLY, Judge.

This is prohibition.

Believing that this case raises a question of general interest and importance, the Eastern District of the Missouri Court of Appeals, pursuant to Rule 83.02, ordered transfer of the case to this Court.

On October 21, 1976, relator secured a judgment against Oscar Wood in the Circuit Court of St. Louis County.

On September 9, 1979, pursuant to § 513.-380, RSMo 1978, and Rule 76.64 [now encompassed in Rule 76.27], the trial court ordered Wood to appear and be examined under oath as a judgment debtor. Section 513.380 provides:

"Whenever an execution against the property of any judgment debtor, individual or corporate, issued from any court in this state, shall be returned unsatisfied, in whole or in part, by any sheriff or other proper officer, the judgment creditor in such execution, his executor, administrator or assign, may, at any time within five years after such return so made, be entitled to an order by the court rendering such judgment, requiring the judgment debtor or, in the case of a corporate judgment debtor, its chief officer to appear before such court at a time and place in said order to be named, to undergo an examination under oath touching his ability and means to satisfy said judgment, and in case of neglect or refusal on the part of such judgment debtor or, in the case of a corporate debtor, its chief officer to obey such order, such court is hereby authorized to issue a writ of attachment against said debtor, as now provided by law, and to punish him or, in the case of a corporate debtor, its chief officer for contempt."

On October 10, 1979, Wood, accompanied by his attorney, appeared as ordered. Upon being interrogated by relator's counsel, Wood answered the first question by giving his name, but thereafter refused to answer any other question. The judgment debtor's refusal to answer was grounded upon the privilege against self-incrimination secured by the Missouri Constitution in Article I, § 19, and the Fifth Amendment to the United States Constitution.

Upon relator's objection that Wood's refusal to answer was improper, the respon-

dent judge overruled the objection and sustained the right of the witness not to answer the questions. Such was the action of the respondent toward the witness' refusal to answer each of the first fifteen questions. Respondent then adjourned the proceeding until the next day at which time he stated that he believed his ruling the previous day was correct, but that *Cantor v. Saitz*, 562 S.W.2d 774 (Mo.App.1978), was the controlling authority and that missing from the record was a statement in general terms by the judgment debtor or his counsel of a "rational basis" upon which the answers to relator's questions could conceivably incriminate him. Respondent then invited Wood's counsel to make such a statement.

Wood's counsel replied that, with respect to a question about where Wood lived and to a question which asked about two house addresses:

"[I]t's conceivable that if the defendant [Wood] is living in a house with a person not his wife, a female not his wife, that would conceivably lead to the last link in a chain of causation on adultery or bigamy. So there are two conceivable possibilities there . . . . I think it's clear that Mr. Wood was engaged in a real estate business with myriads of complicated documents most of which were signed under oath, or notarized. And to have him involved in any way in any aspect of his life at this time could conceivably tend to incriminate particularly with regard to properties he owned or lives in or has anything at all to do with . . . . In this case they specifically say that he has a design to defraud his creditors, and that's what they're trying to prove with this other examination. And that in itself is a misdemeanor."

Thereafter, an additional twenty-two questions were asked, and to each Wood responded by claiming his constitutional privilege against self-incrimination. Relator then asked the respondent to ask the witness' counsel to state the "rational basis" upon which the answers to the twenty-two questions might conceivably incriminate

him. Respondent told relator that Wood's counsel had already done so. Wood's counsel stated further:

"[There are] criminal income tax implications both federal and state in addition to the other items mentioned."

Respondent refused relator's request that he ask Wood whether he was presently under any investigations.

It was then agreed that relator's counsel would read into the record all of his remaining questions and at the conclusion thereof ask the witness generally whether he would answer any of them. This was done, the witness stating that he would answer none of the questions. Upon inquiry by relator's counsel as to Wood's reason for not answering, Wood stated:

"I refuse to testify under Article I, Section 19 of the Constitution of Missouri and under Article [sic] V of the Constitution of the United States on the grounds that it might tend to incriminate me."

Stating that the witness' counsel had stated in general terms a "rational basis" upon which Wood's answers could conceivably incriminate him, and that there were no questions upon which it could be ruled that, as a matter of law, it would be impossible for the witness to incriminate himself, the respondent indicated that he intended to sustain Wood's refusal to answer, but that he would withhold his ruling to permit the filing of a petition for a writ of prohibition.

Relator then filed such a petition in the Court of Appeals, Eastern District. On November 28, 1979, that court issued its preliminary writ ordering the examination of the judgment debtor stayed pending disposition of this case and prohibiting respondent from sustaining the witness' refusal to answer each and every question put to him. The Court of Appeals then ordered this case transferred to this Court. We must dispose of the preliminary writ issued by the Court of Appeals.

The narrow question to be decided is whether the respondent will exceed his jurisdiction by sustaining the judgment debtor's refusal to answer the questions posed him at the § 513.380 examination. The

answer to this question turns on the scope of the privilege against self-incrimination afforded the judgment debtor by the United States and, most importantly, Missouri Constitutions.

From the facts submitted by the parties, it is clear that the respondent believed the scope of the privilege afforded a judgment debtor in a § 513.380 examination was outlined in *Cantor v. Saitz, supra.*

In *Cantor*, after noting that the privilege against self-incrimination has been extended by the Missouri courts to judgment debtors in § 513.380 proceedings, the Court of Appeals surveyed the history of the privilege:

"The seminal case on the subject appears to have resulted from the historic trial of Aaron Burr in the early years of the 19th century. *See United States v. Burr*, 25 Fed.Cas. No. 14,692 E, pages 38, 40, 1 Burr's Trial 244. Justice Marshall delineated some concrete guidelines for the scope of the privilege. Although Justice Marshall's interpretation pertained to the Fifth Amendment of the United States Constitution, much of his language has been frequently quoted by our courts construing the scope of the constitutional privilege in Missouri. In *Ex parte Gauss*, 223 Mo. 277, 122 S.W. 741, 742, our supreme court adopted the following excerpt from Justice Marshall's oft-cited opinion:

" '[I]f the question be of such a description, that an answer to it may or may not criminate the witness, according to the purport of that answer, it must rest with himself, who alone can tell what it would be, to answer the question or not. If, in such a case, he say, upon his oath, that his answer would criminate himself, the court can demand no other testimony of the fact. * * * Many links frequently compose that chain of testimony which is necessary to convict any individual of a crime. It appears to the court to be the true sense of the rule, that no witness is compellable to furnish any one of them against himself. It is certainly

not only a possible but a probable case, that a witness, by disclosing a single fact, may complete the testimony against himself, and to every effectual purpose accuse himself as entirely as he would by stating every circumstance which would be required for his conviction. The fact of itself might be unavailing; but, all other facts without it would be insufficient. While that remains concealed within his own bosom, he is safe; but draw it thence, and he is exposed to a prosecution. The rule which declares that no man is compellable to accuse himself, would most obviously be infringed, by compelling a witness to disclose a fact of this description. What testimony may be possessed, or is attainable, against any individual, the court can never know. It would seem, then, that the court ought never to compel a witness to give an answer which, discloses a fact that would form a necessary and essential part of a crime, which is punishable by the laws.' *State ex rel. Howard v. Allison*, [431 S.W.2d 233, 237 (Mo.App. 1968)]; *State ex rel. Lee v. Cavanaugh*, [419 S.W.2d 929, 933 (Mo.App.1967)]; *Presta v. Owsley*, 345 S.W.2d 649, 652 (Mo.App.1961); *Ex Parte Arvin*, 232 Mo.App. 796, 801, 112 S.W.2d 113, 116 [1937].

"In *Gauss*, supra, our supreme court went on to say that the principles set out in the *Burr* case, supra, are ' . . . entirely consistent with the doctrine generally held, [and specifically followed in Missouri cases] that where the court can say, as a matter of law, that it is impossible that a witness would incriminate himself by answering a question one way or the other, then the court can require an answer . . . .' *Ex parte Gauss*, 223 Mo. [at] 285, 122 S.W. at 742 [1909]; *State ex rel. Howard v. Allison*, supra, [431 S.W.2d] at 237; *State ex rel. Lee v. Cavanaugh*, supra, [419 S.W.2d] at 933; *Presta v. Owsley*, supra, [345 S.W.2d] at 652; *Ex parte Arvin*, 232 Mo.App. [at] 802–03; 112 S.W.2d at 116, 117. Perhaps the consistency is best illustrated in *State ex rel.*

*Caloia v. Weinstein,* [525 S.W.2d 779, 780, 781 (Mo.App.1975)]:

> " ' . . . [T]he witness knows what the court cannot know and the witness must himself judge what the effect of his answer will be. So, if he says under oath that he cannot answer without incriminating himself, then the case is not one where the court can say as a matter of law that it would be impossible for him to incriminate himself by answering the question one way or another. He cannot be compelled to answer and will be protected by law in his refusal to do. *State ex rel. Howard v. Allison,* 431 S.W.2d 233, 236[5], 237[6] (Mo.App.1968); *Presta v. Owsley,* 345 S.W.2d 649, 652[1] (Mo.App.1961); *Brady v. Brady,* 71 S.W.2d 42, 46[3, 4] (Mo.App.1934).' "

*Cantor, supra,* 562 S.W.2d at 777–78.

The Court of Appeals, in *Cantor,* then noted that several Missouri cases, including *Presta v. Owsley, supra,* appeared to conflict with *Gauss* and Chief Justice Marshall's discussion of the privilege in *Burr,* by imposing a "burden of proof" on the witness claiming the privilege to show that an answer to the question asked might tend to incriminate him. The *Cantor* court, quite correctly we believe, noted:

> "This burden requires an explanation from the witness, and puts the judge in a position to evaluate the witness' claim. The court in *Presta,* went on to say that if a particular question appears innocuous on its face, the witness has the burden of showing that the answer might incriminate him. In *State ex rel. Lee v. Cavanaugh, supra,* [419 S.W.2d] at 934, however, the court pointed out that ' . . . the privilege extends not only to refusing to answer the question asked, but to refusing to explain how the answer might incriminate the witness.' The obvious danger of the *Presta* approach is the explanation may be as incriminating as the answer sought. The danger of self-incrimination becomes ever more present with each word of the explanation, and

the protection guaranteed is thereby undermined."

*Cantor, supra,* 562 S.W.2d at 778.

▋ Declaring it wrong to place a "burden of proof" upon the witness, the *Cantor* court nevertheless recognized that "the privilege is, absent some check, subject to abuse by anyone wanting to evade responding to a question." *Id.* The "check" the Court of Appeals in *Cantor* believed proper was "requiring the witness or his counsel to describe, in general terms, a rational basis upon which his answer could conceivably incriminate him." *Id.* Although the Court of Appeals cautioned trial judges, in making a determination whether they could say as a matter of law that it would be impossible for a witness to incriminate himself, to be "acutely aware that in the deviousness of crime and its detection incrimination may be approached and achieved by obscure and unlikely lines of inquiry," we do not believe the "rational basis" approach provides greater protection against compelling a witness to incriminate himself than the criticized "burden of proof" test. It would appear that many, if not all, of the dangers the *Cantor* court saw in placing a "burden of proof" on the witness to show that his answer might tend to incriminate him, are still present when the witness is required to state a "rational basis" upon which his answer could conceivably incriminate him. By requiring the witness to state a "rational basis," it is possible that the witness will "surrender the very protection which the privilege is designed to guarantee." *Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951). "Logically, indeed, he is boxed in a paradox, for he must prove the criminatory character of what it is his privilege to suppress just because it is criminatory. The only practicable solution is to be content with the door's being set a little ajar, and while at times it permits the suppression of competent evidence, nothing better is available." *United States v. Weisman,* 111 F.2d 260, 262 (2d Cir. 1940). Both the "burden of proof" requirement and the less stringent "rational basis" requirement involve an element of compulsion which we

find inconsistent with the principles underlying the privilege.

We may neither "add to nor subtract from the mandates of the United States Constitution," *North Carolina v. Butler*, 441 U.S. 369, 376, 99 S.Ct. 1755, 1759, 60 L.Ed.2d 286 (1979). However, in order to assure that the protection given by Article I, § 19, of the Missouri Constitution, is meaningful, we hold that once a witness claims the privilege afforded him under that provision, *a rebuttable presumption arises that the witness' answer might tend to incriminate him,* a presumption that can be rebutted by a demonstration by the party seeking the answer that such answer " 'cannot possibly' have such tendency to incriminate." *Temple v. Commonwealth*, 75 Va. 892, 898 (1881), cited with approval in *Hoffman v. United States, supra*, 341 U.S. at 488–89, 71 S.Ct. at 819. We believe this rule to be consistent with the principle, early expressed by Chief Justice Marshall in *Burr, supra*, that "it belongs to the court to consider and to decide whether any direct answer [to a question propounded] can implicate the witness," for it will fall upon the court to decide whether the presumption has been rebutted and, therefore, whether the witness must answer the question.

Since the respondent applied the *Cantor* standard, we make the preliminary writ of prohibition issued by the Court of Appeals absolute, and prohibit respondent from proceeding further in a manner inconsistent with the standard enunciated in this opinion.

All concur.