## Ex parte TONY GAUSS.

Division Two, November 23, 1909.

1. CONTEMPT: Refusing to Answer Questions: Self-Incrimination: Necessary Link. A witness is not compelled by his answer to furnish any one of the many links necessary to convict him of a crime.

2. ————: ————: ————: ————: How Determined. If the question be of such character that an answer to it may or may not incriminate the witness, it must rest with the witness to determine whether or not an answer to it would have that tendency; and in such case the court cannot compel him to answer.

3. ————: ————: ————: In Any Investigation. The Constitution does not merely mean that a witness shall not be compelled to testify in a then existing case against himself, but it means that he shall not be compelled when called as a witness in any investigation to give testimony which may tend to show that he himself has committed a crime.

4. ————: ————: ————: Betting on Horse Race: Link in Other Crime. Petitioner was arrested in August for making a wager on a horse race, and in September was summoned before the grand jury, and asked: "On the day that you

were arrested, which was some time in August, this year, had you, just prior to your arrest, made or placed a bet with Steve Pensa, at his place of business on Washington Avenue, upon the result of a horse race?" The law against book-making and pool-selling did not make it a crime to place a bet on a horse race. The defendant refused to answer on the ground that to do so might incriminate him. *Held*, that, it not being entirely plain that his answer might not lead to a prosecution of himself, he was not compelled to answer, and the court could not commit him for contempt for refusing to answer. It cannot be held that the only prosecution that could grow out of an affirmative answer to the question would be one for betting on a horse race, and as the witness did not limit his reason to any particular offense, but stated his answer would incriminate him, the court should not have compelled him to answer; for, for aught the court knew, the State may have been in possession of sufficient other evidence to have convicted him of some other crime, if only it could by his answer fix on him that he was present at Pensa's place at a given time and then and there placed a bet with Pensa upon the result of a horse race.

## Habeas Corpus.

PETITIONER DISCHARGED.

*T. J. Rowe, Thos. J. Rowe, Jr.,* and *Henry Rowe* for petitioner.

Petitioner now seeks his discharge from said imprisonment, because he contends that section 23, article 2, of the Constitution of Missouri, which provides that no person shall be compelled to testify against himself in a criminal case, was violated by the judgment of the court which directed his imprisonment. Said imprisonment is in violation of that part of the Fifth Amendment to the Constitution of the United States which says, "Nor shall any person be compelled, in any criminal case, to be a witness against himself." In State v. Young, 119 Mo. 495, the court says that the immunity afforded is broad enough to protect the accused against self-crimination before any tribunal or in any proceeding. Ex parte Arnot Carter, 166

Mo. 604, is decisive of this case. The witness, Carter, in that case, determined that his answer to the questions might incriminate him, and this court decided that his opinion was conclusive and could not be questioned by the trial court, and that he and he alone had to determine whether he could answer without self-crimination. In Ex parte Buskett, 106 Mo. 603, the Supreme Court declared section 3819, R. S. 1899, constitutional. See Ward v. State, 2 Mo. 120; State v. Talbot, 73 Mo. 357. The doctrine declared in the Carter Case, supra, is supported by the following decisions: State ex rel. v. Simmons Co., 109 Mo. 118; Counselman v. Hitchcock, 142 U. S. 547; Boyd v. U. S., 116 U. S. 616; Emery's Case, 107 Mass. 172. See, also, People v. Mather, 4 Wend. 252. The court, in State v. Butler, 47 S. C. 25, holds that "the right to refuse to answer a question that would criminate is personal to the witness." 1 Wharton on Evidence (3 Ed.), sec. 536.

*Seebert G. Jones* and *Forrest G. Ferris* for respondents.

(1) When a party is brought before a court on a writ of *habeas corpus,* and the return shows he is in custody under a commitment for contempt, the only questions to be considered are: (a) Had the court jurisdiction to commit, and (b) is the commitment in legal form charging a contempt? Church on *Habeas Corpus,* sec. 315, p. 444; Ex parte McKee, 18 Mo. 600. In this case the commitment was issued by a court having unquestioned authority to commit for contempt. The only question remaining is as to whether the facts recited in the commitment constitute and charge contempt. This, the respondents contend, it plainly and specifically does. (2) Where a witness pertinaciously refuses to answer a lawful question, to compel obedience the court may order his imprisonment until he does answer, and need not limit his imprisonment to a given number of days; and this whether such con-

tumacious refusal to answer be before the court or the grand jury. Ex parte Renshaw, 6 Mo. App. 474; 7 Am. and Eng. Ency. Law, 47. (3) It is the province of the court to judge whether any direct answer to the question that may be proposed will furnish evidence against the witness. If such answer may disclose a fact which forms a necessary and essential link in the chain of testimony, which would be sufficient to convict him of any crime, he is not bound to answer it so as to furnish matter for that conviction. In such case the witness must himself judge what his answer will be, and if he say on his oath he cannot answer without accusing himself, he cannot be compelled to answer. Burr's Trial, 245; Ward v. State, 2 Mo. 120; Ex parte Buskett, 106 Mo. 602, 607; Rapalje's Law of Witnesses, sec. 266, p. 438; 30 Am. and Eng. Ency. Law (2 Ed.), 1166; Edwards, Grand Jury, p. 133. At the time these questions were asked the witness before the grand jury, that body, as recited in the commitment, was engaged in an investigation of the violations of the book-making and pool-selling law, Laws of 1907, p. 232. This law is leveled against the book-maker and the pool-seller only, and is limited to his acts in book-making and pool-selling. It prohibits book-making, pool-selling, registration of bets, and the receiving as custodian money wagered upon certain contests. But it is not under this law, nor under any other law known to us, made a crime for a person to make or place a bet on a horse race, or to make another person the custodian of a bet upon the result of a horse race. It, therefore, cannot be said that any direct answer to the questions asked would furnish evidence against the witness. An answer, either yes or no, by the witness could not disclose a fact which would form a necessary and essential link in the chain of testimony which would be sufficient to convict him of a crime. As no answer could implicate the witness the court was correct in ordering him to answer.

GANTT, P. J.—The petitioner by this proceeding seeks to be discharged from imprisonment and the custody of the jailer of the city of St. Louis. It appears from the record that the petitioner was committed for contempt by the circuit court of the city of St. Louis for refusing to answer certain questions propounded to him by the grand jury of said city on the 27th day of September, 1909. It appears that in August, 1909, petitioner was arrested for making a wager on a horse race, and on September 30, 1909, he was summoned before the grand jury of the city of St. Louis, and was asked the following questions:

"I want to ask you again, Mr. Gauss: On the day that you were arrested, which was some time in August, this year, had you, just prior to your arrest, made or placed a bet with Steve Pensa, at his place of business on Washington avenue, upon the result of a horse race?

"Q. Did you ever give Steve Pensa, or any other person in his place of business, any money to be placed upon a horse race to be run at any place within the State of Missouri, or without the State?

"Q. Have you, at any time within the last three years, made Steve Pensa the custodian of any bet upon the result of a horse race?"

The petitioner refused to answer these questions because by so doing he might incriminate himself. Whereupon his refusal was reported to the Judge of Division Number Ten of the Circuit Court of the city of St. Louis, who ordered him to answer said questions, and upon his refusal to do so committed him to the jail of the city of St. Louis until such time as he would answer said questions. The petitioner insists that he is entitled to be discharged from said imprisonment because the effect of the said judgment and order was to violate section 23 of article 2 of the Constitution of this State, which provides: "That no person shall be compelled to testify against himself in a criminal cause," and

because said commitment is in violation of that part of the Fifth Amendment of the Constitution of the United States, which says: "Nor shall (any person) be compelled in any criminal case to be a witness against himself."

In State v. Young, 119 Mo. 495 l. c. 520, it was said by this court: "The Constitution means more than the protection of the accused on his final trial when his rights are scrupulously guarded by the courts. It as clearly protects him from being forced to testify against himself in any and all preliminary investigations, whether before the coroner, grand jury or the justice on his preliminary examination. The immunity afforded him by the Constitution is broad enough to protect him against self-crimination, 'before any tribunal·in any proceding.' Counselman v. Hitchcock, 142 U. S. 547; Cullen v. Commonwealth, 24 Gratt. 624; State ex rel. v. Hardware Co., 109 Mo. 118."

Learned counsel for the State insist, however, that it is "the province of the court to judge whether any direct answer to. the question that may be proposed will furnish evidence against the witness. If such answer may disclose a fact which forms the necessary and essential link in the chain of testimony, which would be sufficient to convict him of any crime, he is not bound to answer it, so as to furnish matter for that conviction, but if. the question propounded does not disclose upon its face that it will have such tendency, and the witness fails to clearly show to the court how it will have such effect, he may be punished for contempt after he refuses to˙ answer after being directed to do so by the court." And their contention is that the petitioner was not entitled to invoke the protection of the Constitution against answering these questions for the reason, as they say, that it is not, under this Act of 1907 against book-making and poolselling, nor any other law, made a crime for a person to make or place a bet on a horse race, or to make

any other person the custodian of a bet upon the result of a horse race.

This court in Ex Parte Arnot Carter, 166 Mo. l. c. 614, said: "It is a reasonable construction of the constitutional provision, that the witness is protected from being compelled to disclose the circumstances of his offense, or the sources from which, or the means by which, evidence of its commission, or of his connection with it, may be obtained, or made effectual for his conviction, without using his answers as direct admissions against him."

Chief Justice MARSHALL when engaged in the trial of Aaron Burr (1 Burr's Trial, 244), said: "If the question be of such a description, that an answer to it may or may not criminate the witness, according to the purport of that answer, it must rest with himself, who alone can tell what it would be, to answer the question or not. If, in such a case, he say, upon his oath, that his answer would criminate himself, the court can demand no other testimony of the fact. . . . According to their statement (the counsel for the United States), a witness can never refuse to answer any question, unless that answer, unconnected with other testimony, would be sufficient to convict him of a crime. This would be rendering the rule almost perfectly worthless. Many links frequently compose that chain of testimony, which is necessary to convict any individual of a crime. It appears to the court to be the true sense of the rule, that no witness is compellable to furnish any one of them against himself. It is certainly not only a possible but a probable case, that a witness, by disclosing a single fact, may complete the testimony against himself, and to every effectual purpose accuse himself as entirely as he would by stating every circumstance which would be required for his conviction. That fact of itself might be unavailing; but, all other facts without it would be insufficient. While that remains concealed within his own bosom,

he is safe; but draw it from thence, and he is exposed to a prosecution. The rule which declares that no man is compellable to accuse himself, would most obviously be infringed, by compelling a witness to disclose a fact of this description. What testimony may be possessed, or is attainable, against any individual, the court can never know. It would seem, then, that the court ought never to compel a witness to give an answer, which discloses a fact that would form a necessary and essential part of a crime, which is punishable by the laws.''

Learned counsel for the State seem to conclude that the only possible prosecution that could grow out of an affirmative answer to the questions propounded to the petitioner in this case by the grand jury, would be one for betting on a horse race, but the witness did not limit his reason to any particular offense but stated that to answer the question would incriminate him. For aught that the court knew, the State may have been in possession of sufficient other evidence to have convicted the petitioner of some other crime, if only it could fix upon him that he was present at Pensa's place at a given time and then and there placed a bet with Pensa upon the result of a horse race, or gave Pensa money at that time to be placed upon a horse race. The meaning of this constitutional provision has time and again been held not to be merely a provision that a person shall not be compelled to testify in a then existing case against himself, but that he shall not be compelled when acting as a witness in any investigation to give testimony which may tend to show that he himself has committed a crime. And this court has approved a doctrine announced by Chief Justice MARSHALL, that if the question be of such description that an answer to it may or may not incriminate the witness it must rest with himself, who alone can tell what it would be to answer the question or not.

And if, in such case, he say upon his oath, that his answer would incriminate himself, the court can demand no other testimony of the fact. This rule, we think, is entirely consistent with the doctrine generally held, that where the court can say as a matter of law, that it is impossible that a witness would incriminate himself by answering a question one way or the other, then the court can require an answer. But we think the question propounded in this case, is not such a question, but one which the witness had the right to decline to answer, if, in his opinion, it would incriminate him. To hold that he must have explained all of the other testimony in the case, which would be sufficient to convict him, by an answer to this question, would render the rule entirely worthless. The language of the court in People v. Mather, 4 Wend. l. c. 252, is, we think, very persuasive. Said the court: "Where the disclosures he may make can be used against him to procure his conviction for a criminal offense, or to charge him with penalties and forfeitures, he may stop answering before he arrives at the question, the answer of which may show directly his moral turpitude. The witness who knows what the court does not know, and what he cannot communicate without being a self-accuser, is to judge of the effect of his answer, and if it proves a link in the chain of testimony, which is sufficient to convict him, when the others are made known, of a crime, he is protected by law from answering the question. If there be a series of questions, the answer to all of which would establish his criminality, the party cannot pick out a particular one and say, if that be put, the answer will not criminate him. 'If it is one step having a tendency to criminate him, he is not compelled to answer.'"

In State ex rel. v. Hardware Co., 109 Mo. 118, Judge BARCLAY, speaking for this court, said: "It is a reasonable construction we think, of the constitutional provision, that the witness is protected 'from

being compelled to disclose the circumstances of his offense, the sources from which, or the means by which, evidence of its commission, or of his connection with it, may be obtained, or made effectual for his conviction, without using his answers as direct admissions against him.'"

In our opinion, the petitioner having testified that he could not answer the questions without criminating himself, and it not being entirely plain that his answers might not lead to a prosecution of himself, we think the circuit court erred in committing him for contempt in refusing to answer.

And he is, therefore, entitled to be discharged from his imprisonment and it is so ordered. *Burgess* and *Fox, JJ.,* concur.