STATE ex rel. Ben F. CALOIA et
al., Relators,

v.

Hon. Noah WEINSTEIN, Judge,
etc., Respondent.

No. 36642.

Missouri Court of Appeals,
St. Louis District,
Division One.

June 3, 1975.

Motion for Rehearing or Transfer
Denied Aug. 7, 1975.

Application to Transfer Denied
Sept. 8, 1975.

Ziercher, Hocker, Tzinberg, Human & Michenfelder, Leonard D. Vines, Clayton, for relators.

Bernard A. Reinert, St. Louis, for respondent.

WEIER, Presiding Judge.

Our preliminary writ of prohibition was issued to respondent circuit judge to show cause why he should not be prohibited from compelling production of the tax returns or copies thereof of Ben F. Caloia and Mabel C. Caloia, his wife. Upon the basis of the plea of relators that the production of these documents might tend to incriminate them, our preliminary rule is made absolute.

Relators Ben F. Caloia and Mabel C. Caloia individually and as statutory trustees of two defunct corporations were sued to set aside the transfer of certain real property as being in fraud of plaintiff Commercial Union Insurance Company of America, judgment creditor on an unpaid and unsat- isfied judgment in the amount of $156,- 974.28 against Ben F. Caloia and one of the defunct corporations. Plaintiff in this suit instituted discovery proceedings by seeking among other things the production of federal and state income tax returns or copies thereof made on behalf of the defunct corporations or the individual defendants for the years 1969, 1970, 1971, 1972 and 1973. Relators refused to produce these tax returns by invoking the privileges of the Fifth Amendment of the United States Constitution and Article I, § 19 of the Missouri Constitution, V.A.M.S., on the grounds that the documents might tend to incriminate them. On October 24, 1974 respondent judge entered an order sustaining the motion for production of the tax returns and ordered the defendants to produce them by November 14, 1974 or grant plaintiff authorization to obtain said returns or copies thereof from the Internal Revenue Service and the Missouri Department of Revenue. A petition for writ of prohibition was filed in this court and we issued our preliminary writ prohibiting respondent solely from compelling production of the tax returns of the individuals Ben F. Caloia and Mabel C. Caloia.

■ Generally, there is no absolute privilege with respect to copies of income tax returns in favor of the taxpayer against the valid process of a court engaged in a proper inquiry within its jurisdiction. *State v. Curtis*, 334 S.W.2d 757, 762[16] (Mo.App. 1960). But no case has been called to our attention which has ruled on the question whether the constitutional privilege against self-incrimination is available at the discovery stage to prevent the production of copies of income tax returns in a civil case. It has long been the rule that if an answer to a question propounded to a witness may disclose a fact which forms a necessary and essential link in a chain of testimony which would convict the witness of any crime, then he is not bound to answer it. The witness knows what the court cannot know and the witness must himself judge what

the effect of his answer will be. So, if he says under oath that he cannot answer without incriminating himself, then the case is not one where the court can say as a matter of law that it would be impossible for him to incriminate himself by answering the question one way or another. He cannot be compelled to answer and will be protected by law in his refusal to do so. *State ex rel. Howard v. Allison*, 431 S.W.2d 233, 236[5], 237[6] (Mo.App.1968); *Presta v. Owsley*, 345 S.W.2d 649, 652[1] (Mo.App. 1961); *Brady v. Brady*, 71 S.W.2d 42, 46[3, 4] (Mo.App.1934).

■■ The burden of proof rests on the witness claiming the protection of the constitutional privilege to show that the question asked or the document requested calls for an answer which may incriminate him. He must show that an answer may incriminate him if a particular question appears on its face to be innocuous. But constitutional rights are not to be denied through the exercise of an impractical judgment as to whether the question calls for an answer that may tend to incriminate the witness. The court in appraising the claim must be sensitive to the circumstances existing and perceptive in viewing the possibilities of incrimination. *Presta v. Owsley, supra* at 655[2, 3]. Thus, in *State ex rel. Howard v. Allison, supra* at 237, although no evidence was offered to indicate how answers to questions under consideration might have tended to incriminate the relator, the sensitivity of the court to the circumstances existing and its perceptiveness in viewing the possibilities of incrimination were enlisted and relied upon to sustain a determination that questions asked relators as to whether they owned an interest in an eighty-acre tract sought answers which might tend to incriminate them by disclosing a fact or facts constituting a link in a chain of evidence sufficient to convict.

The suggestion has been made by respondent that when tax returns are filed they become public documents and hence are subject to public scrutiny. Under such circumstances, respondent contends that an individual waives his right to assert the privilege against self-incrimination. It has been held that the privilege against self-incrimination does not apply to the production of returns and records when they are sought by an investigative agency of the government for the purpose of determining whether or not a person required to file these returns and keep records has violated a statute under which these returns are to be made and records kept. In *Shapiro v. United States*, 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787 (1947) the petitioner was charged with the violation of the emergency price control act and was ordered to produce all of his books and records relating to commodity sales. These records were required to be kept by law and hence the court classified them as "public documents". It refused to allow the petitioner to invoke the privileges against self-incrimination as to these records. But this information was to be used by the government for determining whether or not there had been a violation of the emergency price control act, the law which required them to be kept.

■■ The production of income tax returns filed by the taxpayer may be compelled in a prosecution for a violation of the tax laws by that taxpayer, but under § 143.-976 RSMo 1969, V.A.M.S., the director of revenue, employees of the department and any other persons having permission to inspect any return are not allowed to divulge or make known in any manner any of the particulars set forth in the return except where required to produce the return or evidence of anything contained in it in any action or proceeding arising out of the income tax laws. Violation of this section is a felony. It is obvious that although such returns may be considered "public documents" so far as the revenue laws are concerned, their use for any other purpose than to enforce the collection of income tax with certain minimal exceptions set forth in the statute is barred. Section 7213 of the Internal Revenue Code likewise prohibits the dilvulgence of matters contained in income

tax returns under penalty of a misdemeanor not only as to federal employees but also state employees. Section 6103(b)(2) allows inspection of returns by any official, body, or commission lawfully charged with the administration of any state tax law if it is for the purpose of administration of those laws. 26 U.S.C.A. §§ 6103 and 7213.

■ The suggestion is also made by respondent that since relators have argued that the tax returns might tend to incriminate them under § 561.550 RSMo 1969, V.A.M.S., providing that fraudulent conveyances are misdemeanors, the prosecution is barred by the one year period of limitation provided in § 541.210 RSMo 1969, V.A.M.S., and hence the privilege against self-incrimination cannot be invoked. This may be true if the only incriminating evidence produced in the tax returns would pertain to fraudulent conveyances. A somewhat similar contention was advanced in *State ex rel. North v. Kirtley*, 327 S.W.2d 166 (Mo. banc 1959). There the respondent judge contended that the relator should answer a question propounded in his examination as a judgment debtor (§ 513.380, RSMo 1969, V.A.M.S.) with regard to whether he owned certain property. Respondent urged that § 491.080 RSMo 1969, V.A.M.S., afforded the relator immunity from prosecution for fraudulent conveyance of property. In prohibiting respondent, the court pointed out that this section was a special immunity statute which by its terms prevented the use of the testimony of any witness as evidence to prove any fact in a suit or prosecution against such person, or any penalty for violation of any law only in relation to fraudulent conveyance of property. The court concluded that the section was inadequate in that it did not afford protection against compulsory self-incrimination contemplated by Article I, § 19 of the Missouri Constitution as to other crimes, and, therefore, a judgment debtor could not be required to forego his reliance upon the constitutional guarantee.

In the case before us, it is likewise true that even though the statute of limitations may bar any prosecution for fraudulent conveyance of the real property which is the subject of litigation in the lower court, the copies of the income tax returns sought to be produced and ordered by the court to be submitted to the respondent could possibly provide evidence, or a link in a chain of evidence, to incriminate the relators because of some other illegal activity. It is well known that income tax returns may disclose sources of income from illegal means for which the taxpayer may be held to account for tax on gains in those endeavors. Such activities may be disassociated from any conveyance of property and yet compelling their disclosure may subject the taxpayer to prosecution under the criminal laws in an entirely different area than fraudulent conveyance. This is the kind of evidence which a witness is not compelled to give under Article I, § 19 of the Missouri Constitution and the assertion of the privilege granted under that section by relators herein must be sustained.

Application has been made here of prior interpretations of the effect of Article I, § 19 of the Missouri Constitution under Missouri law. Since this disposes of the matter before us, we do not consider the effect of the privilege claimed by relators under Amendment V of the United States Constitution.

The provisional writ heretofore issued is made absolute.

DOWD and RENDLEN, JJ., concur.