Sol F. CANTOR, Relator,

v.

Honorable Milton SAITZ, Respondent.

No. 39307.

Missouri Court of Appeals,
St. Louis District,
Division Three.

Feb. 7, 1978.

Cupples, Cooper & Haller, Inc., Irving L. Cooper, Barbara W. Wallace, Clayton, for relator.

Lewis, Rice, Tucker, Allen & Chubb, John C. Shapleigh, St. Louis, for respondent.

McMILLIAN, Judge.

Our preliminary writ of prohibition was issued to respondent circuit judge to show cause why he should not be prohibited from compelling relator Sol F. Cantor to answer questions which may tend to incriminate him.

On May 12, 1977, an examination of judgment debtor and relator in this proceeding Sol F. Cantor was held pursuant to Rule 76.64, as a result of a judgment registered by plaintiff XYOmed, Inc. During the examination by plaintiff's counsel, Cantor invoked his privilege against self-incrimination under the Fifth and Fourteenth Amendments of the United States Constitution, and Art. I, § 19 of the Missouri Constitution. We set forth the proceedings containing the questions in which the relator invoked his privilege:

1. Shapleigh (Plaintiff's counsel) asked Cantor (Judgment Debtor) his address. Cooper (Counsel for Judgment Debtor) advised Cantor not to answer. Cantor invoked Fifth Amendment. Judge Saitz compelled Cantor to answer.

2. *Q* (Shapleigh) Are there any legal actions or suits pending against you?
 *A* (Cantor) Fifth Amendment (Fifth), Judge Saitz compelled answer.

3. *Q* (Shapleigh) Are you able to show this court how an answer to the last question will incriminate you?
 *A* (Cantor) Fifth, Judge Saitz compelled answer.

4. *Q* (Shapleigh) Do you have any other sources of income?
 *A* (Cantor) Fifth, Judge Saitz compelled answer.

5. *Q* (Shapleigh) Do you feel you can't answer without incriminating yourself?
 *A* (Cantor) Yes.

6. *Q* (Shapleigh) Can you show this court how this answer will incriminate you?
 *A* (Cantor) Fifth, Judge Saitz compelled answer.

7. *Q* (Shapleigh) What monies did you receive in the last 60 days from sources other than St. Elizabeth's?
 *A* (Cantor) Fifth, Judge Saitz compelled answer.

8. *Q* (Shapleigh) What are your normal living expenses?
 (Cooper) Objection for non-relevancy.
 Judge Saitz overruled objection.

A (Cantor) Fifth, Judge Saitz compelled answer.

Q (Shapleigh) Do you own an auto?
A (Cantor) Fifth, Judge Saitz compelled answer.

Q (Shapleigh) Can you show why the last question will incriminate you.
A (Cantor) Fifth, Judge Saitz compelled answer.

Q (Shapleigh) Do you own your own home?
A Fifth, Judge Saitz compelled answer.

Q (Shapleigh) Do you own any other real estate in or outside of Missouri?
A (Cantor) Fifth, Judge Saitz compelled answer.

Q (Shapleigh) Do you understand what you are saying?
A (Cantor) Yes, that these answers may, not will, but may incriminate me.

Q (Shapleigh) Again, can you show any reasons why that answer will incriminate you?
A (Cantor) Fifth, Judge Saitz compelled answer.

Q (Shapleigh) Do you have any interest under a will or trust?
A (Cantor) Fifth, Judge Saitz compelled answer.

Q (Shapleigh) Have you received any money recently under any will or inheritance?
A (Cantor) No, then invoked Fifth. (Cooper) asked for a voir dire to see if Cantor understood what happened. Judge Saitz denied.

Q (Shapleigh) Within the past 2 years did you receive any inheritance?
A Fifth, Judge Saitz compelled answer.

Q (Shapleigh) What property did you devise in the will?
A (Cantor) Fifth. Judge Saitz compelled answer.

Q (Shapleigh) Do you have any bank accounts, checking or savings accounts?

A (Cantor) Fifth, Judge Saitz compelled answer.

Q (Shapleigh) Do you own any household goods?
A (Cantor) Fifth, Judge Saitz compelled answer.

Q (Shapleigh) Do you have a safe deposit box?
A (Cantor) Fifth Amendment, Judge Saitz compelled answer.

Q (Shapleigh) Do you have any insurance on your life?
A (Cantor) Fifth, Judge Saitz compelled answer.

Q (Shapleigh) To whom to (sic) you owe money?
A (Cantor) Fifth, Judge Saitz compelled answer.

Q (Shapleigh) From which bank do you receive such a statement?
A (Cantor) Fifth, Judge Saitz compelled answer.

Q (Shapleigh) Do you receive statements from more than one bank?
A (Cantor) Fifth, Judge Saitz compelled answer.

Q (Shapleigh) Have you recently given any financial statements for example, in order to obtain credit?
A (Cantor) Fifth, Judge Saitz compelled answer.

Q (Shapleigh) Did you file a Federal or State income tax return in 1976?
A (Cantor) Fifth, Judge Saitz compelled answer.

Q (Shapleigh) Did you cash a check in order to get that cash?
A (Cantor) Fifth. Judge Saitz compelled answer.

Q (Shapleigh) Do you own an auto?
A Fifth. Judge Saitz compelled answer.

Before citing the relator for contempt, the respondent granted leave to file this writ of prohibition.

 Missouri courts have for quite some time, recognized that the privilege against self-incrimination as it appears in both the federal and state constitutions, is

available to a judgment debtor in an examination proceeding.[1] *State ex rel. Howard v. Allison*, 431 S.W.2d 233, 235 (Mo.App. 1968); *State ex rel. North v. Kirtley*, 327 S.W.2d 166 (Mo. banc 1959); *State ex rel. Lee v. Cavanaugh*, 419 S.W.2d 929 (Mo.App. 1967). If an answer to a question posed to a witness may disclose a fact which forms a necessary and essential link in a chain of testimony which would convict the witness of any crime, then he is not bound to answer it. *State ex rel. Caloia v. Weinstein*, 525 S.W.2d 779, 780 (Mo.App.1975); *State ex rel. Howard v. Allison*, supra, at 237.

The seminal case on the subject appears to have resulted from the historic trial of Aaron Burr in the early years of the 19th century. *See United States v. Burr*, 25 Fed.Cas.No. 14,692 E, pages 38, 40, 1 Burr's Trial 244. Justice Marshall delineated some concrete guidelines for the scope of the privilege. Although Justice Marshall's interpretation pertained to the Fifth Amendment of the United States Constitution, much of his language has been frequently quoted by our courts construing the scope of the constitutional privilege in Missouri. In *Ex parte Gauss*, 223 Mo. 277, 122 S.W. 741, 742, our supreme court adopted the following excerpt from Justice Marshall's oft-cited opinion:

"[I]f the question be of such a description, that an answer to it may or may not criminate the witness, according to the purport of that answer, it must rest with himself, who alone can tell what it would be, to answer the question or not. If, in such a case, he say, upon his oath, that his answer would criminate himself, the court can demand no other testimony of the fact. * * * Many links frequently compose that chain of testimony which is necessary to convict any individual of a crime. It appears to the court to be the true sense of the rule, that no witness is compellable to furnish any one of them against himself. It is certainly not only a possible but a probable case, that a witness, by disclosing a single fact, may complete the testimony against himself, and to every effectual purpose accuse himself as entirely as he would by stating every circumstance which would be required for his conviction. The fact of itself might be unavailing; but, all other facts without it would be insufficient. While that remains concealed within his own bosom, he is safe; but draw it thence, and he is exposed to a prosecution. The rule which declares that no man is compellable to accuse himself, would most obviously be infringed, by compelling a witness to disclose a fact of this description. What testimony may be possessed, or is attainable, against any individual, the court can never know. It would seem, then, that the court ought never to compel a witness to give an answer which, discloses a fact that would form a necessary and essential part of a crime, which is punishable by the laws." *State ex rel. Howard v. Allison*, supra, at 237; *State ex rel. Lee v. Cavanaugh*, supra, at 933; *Presta v. Owsley*, 345 S.W.2d 649, 652 (Mo.App.); *Ex Parte Arvin*, 232 Mo.App. 796, 801, 112 S.W.2d 113, 116.

In *Gauss*, supra, our supreme court went on to say that the principles set out in the *Burr* case, supra, are ". . . entirely consistent with the doctrine generally held, [and specifically followed in Missouri cases] that where the court can say, as a matter of law, that it is impossible that a witness would incriminate himself by answering a question one way or the other, then the court can require an answer . . . ." *Ex parte Gauss*, 223 Mo. 285, 122 S.W. at 742; *State ex rel. Howard v. Allison*, supra, at 237; *State ex rel. Lee v. Cavanaugh*, supra, at 933; *Presta v. Owsley*, supra, at 652; *Ex parte Arvin*, 232 Mo.App. 802–03; 112 S.W.2d at 116, 117. Perhaps the consistency is best illustrated in *State ex rel. Caloia v. Weinstein*, supra, at 780, 781:

". . . [T]he witness knows what the court cannot know and the witness must himself judge what the effect of his an-

---

1. For the purposes of this appeal, we need only consider the privilege as guaranteed by the Constitution of Missouri.

swer will be. So, if he says under oath that he cannot answer without incriminating himself, then the case is not one where the court can say as a matter of law that it would be impossible for him to incriminate himself by answering the question one way or another. He cannot be compelled to answer and will be protected by law in his refusal to do. *State ex rel Howard v. Allison*, 431 S.W.2d 233, 236[5], 237[6] (Mo.App.1968); *Presta v. Owsley*, 345 S.W.2d 649, 652[1] (Mo.App. 1961); *Brady v. Brady*, 71 S.W.2d 42, 46[3, 4] (Mo.App.1934)."

Our research has produced several cases which appear to be in conflict with the above authority. In *Presta v. Owsley*, supra, at 653, the court imposed a "burden of proof" on the witness claiming the privilege to show that the question asked called for an answer that may tend to incriminate him. *Accord, State ex rel. Caloia v. Weinstein*, supra, at 781. This burden requires an explanation from the witness, and puts the judge in a position to evaluate the witness' claim. The court in *Presta*, went on to say that if a particular question appears innocuous on its face, the witness has the burden of showing that the answer might incriminate him. In *State ex rel. Lee v. Cavanaugh*, supra, at 934, however, the court pointed out that ". . . the privilege extends not only to refusing to answer the question asked, but to refusing to explain how the answer might incriminate the witness." The obvious danger of the *Presta* approach is the explanation may be as incriminating as the answer sought. The danger of self-incrimination becomes ever more present with each word of the explanation, and the protection guaranteed is thereby undermined. For example, a witness questioned about the ownership of an automobile could, in the process of explaining how his response could incriminate him, volunteer information that would furnish the missing link in an unsolved hit and run accident or a robbery.

It is said that in appraising the claim, a judge ". . . must be sensitive to the circumstances existing and perceptive in viewing the possibilities of incrimination, . . ." *Presta v. Owsley* supra, at 653, but this assumes a judge can hypothesize circumstances which are in fact known only to the witness.

In the above example, it would be unlikely that a judge could hypothesize circumstances to include the proposed crimes especially in view of the innocent nature of the question.

The burden pertaining to an innocuous question can be equally dangerous. Even a question that appears to be innocuous on its face can call for an answer that provides the missing link in a chain of readily accessible or known facts, which could lead to a conviction. See *State ex rel. Lee v. Cavanaugh*, supra, at 934. We believe the better reason of authority does not impose a burden of proof on the witness. See *State ex rel. Howard v. Allison*, 431 S.W.2d 233, where the witness offered no explanation of the possible incriminating effects of her response.

While we believe imposing a "burden of proof" on the witness is improper, we are mindful that the privilege is, absent some check, subject to abuse by anyone wanting to evade responding to a question. Just what check should be imposed, however, is a difficult question. As discussed above, requiring the witness to explain his reasons defeats the protection of the privilege to the extent that the substance of the explanation can be used against him. On the other hand, no check on the privilege provides for arbitrary use.

After considering carefully the interests involved, we believe that the privilege is not eroded by requiring the witness or his counsel to describe, in general terms, a rational basis upon which his answer could conceivably incriminate him. *State ex rel. Lee v. Cavanaugh*, 419 S.W.2d 929 (Mo.App.1967). We consider this to be significantly different than imposing a burden of proof, for great weight should be given to the witness' claim. See *Application of Leavitt*, 174 Cal.App.2d 535, 345 P.2d 75, 77 (Cal.App.1959). The court cannot compel the witness to answer unless it can say as a

matter of law that it would be impossible for the witness to incriminate himself. *Ex Parte Gauss,* supra. We caution trial judges to be " '. . . acutely aware that in the deviousness of crime and its detection incrimination may be approached and achieved by obscure and unlikely lines of inquiry.' " *State ex rel. Lee v. Cavanaugh,* supra, at 935.

Relator has pointed out that his answers may expose him to criminal penalties for concealment in fraud of his creditors, or income tax evasion. In addition, we can visualize the distinct possibility of several other areas of criminality which could arise in connection with questions propounded at a judgment debtor examination. These areas range from fraud to perjury.

 Viewing the questions posed to the relator in light of the possible criminal penalties listed above, and described in cases cited in this opinion, we can understand the relator's reluctance to respond to many of these questions. The questions concerning relator's income, financial statements, real property, certain personal property, tax returns, banks, bank accounts, and debts, are by no means innocuous. *State ex rel. Howard v. Allison,* supra (real property); *State ex rel. Caloia v. Weinstein,* 525 S.W.2d 779 (Mo.App.1975) (tax returns); *Presta v. Owsley,* 345 S.W.2d 649 (Mo.App.1961) (business assets, certain individuals); *State ex rel. Strodtman v. Haid,* 325 Mo. 1137, 30 S.W.2d 466 (Mo.App.1929) (bank accounts); *State ex rel. Lee v. Cavanaugh,* supra (creditors of the witness). A trial judge could perceive how a response to a question relating to the aforementioned areas might provide a necessary and essential link in a chain of testimony leading to a conviction for a crime.

The questions relating to property received through inheritance, or property belonging to the relator which is included in his testamentary disposition, (questions 16, 17 and 18) are merely attempts to rephrase questions concerning assets. The questions have inheritance tax ramifications as well as those mentioned above.

Questions 1, 2 and 3, however, do not appear to involve matters which could realistically expose the relator to criminal prosecution if he was compelled to answer. It is here that the witness claiming the privilege should describe in general terms a rational basis as discussed above. If the court can say as a matter of law that it is impossible for the witness to incriminate himself, it may compel an answer.

For the reasons stated above, we make our preliminary writ absolute to all questions except 1, 2 and 3. As to those questions, our preliminary writ is quashed.

GUNN, P. J., and KELLY, J., concur.