STATE of Missouri ex rel. Merle
HUDSON, Relator,

v.

Honorable E. Richard WEBBER,
Respondent.

No. WD 31543.

Missouri Court of Appeals,
Western District.

June 9, 1980.

Michael W. Mulford, James S. Cole, Jr.,
Kirksville, for relator.

William E. Alberty, Edina, for respondent.

Before WASSERSTROM, C. J., Presiding, and SHANGLER, PRITCHARD, SWOFFORD, TURNAGE, MANFORD and KENNEDY, JJ.

MANFORD, Judge.

This is an original proceeding in prohibition. A preliminary writ issued. Briefing and argument were to the court en banc. The preliminary writ is made absolute.

Summary judgment had been entered against relator. General execution secured partial satisfaction of the judgment. Proceedings in examination of relator as the judgment debtor were had before respon-

dent. During this examination, nine questions were propounded to relator, in response to which relator refused to answer. In his refusal, relator invoked the privilege against self-incrimination under the Fifth Amendment to the United States Constitution and Mo.Const. Art. I, § 19. Although relator invokes the privilege under the Federal Constitution, reference to our state constitution suffices. Respondent, by order, compelled relator to answer and relator then sought to prohibit such order in this court.

The nine questions were as follows and are listed for illustration only to show how such questions comport with questions found within the dispositive precedent on the issue.

1) "What sources of income do you have?

MR. COLE: Objection

COURT: Overruled

A. I respectfully decline to answer under the privilege guaranteed by the Fifth Amendment, U.S. Constitution, Article I, Section 19 of the Missouri Constitution.

COURT: Is there some claim of privilege against prosecution?

MR. COLE: Yes, Your Honor. The privilege is claimed against self-incrimination . . .

Your Honor, I would say to the Court that the income taxes Mr. Hudson may be liable for on any income conceivably could represent some trouble for him in the future. As far as I know, the business he was in before with the restaurant has a high cash flow and is susceptible to manipulation. In fact, Tom Dasse testified earlier about the manipulation in the restaurant business, and with any sort of income he has now I would say the same applies. Could be trouble with income tax in the future."

2) "Q. Mr. Hudson, do you receive any interest income at the present time?" (privilege invoked)

3) "Q. Mr. Hudson, do you receive any income from rents?" (privilege invoked)

4) "Q. Do you receive any income from dividends from any corporate stocks?" (privilege invoked)

5) "Q. Do you have any checking accounts at the present time, Mr. Hudson?" (privilege invoked)

6) "Q. Do you own any real estate?" (privilege invoked)

7) "Q. Mr. Hudson, do you have any income from self-employment?

A. Odd jobs.

Q. What's the nature of the work you do?

A. Well, I don't have any trade now.

Q. Well, the odd jobs, what—" (privilege invoked)

8) "Q. Mr. Hudson, do you own any automobiles or other motor vehicles?" (privilege invoked)

9) "Q. Mr. Hudson, do you have any interest in any estates that are presently being probated, either as a devisee or legatee or heir?" (privilege invoked)

■ It serves no purpose to restate the long established history of the privilege against self-incrimination. This privilege is available to a judgment debtor in proceedings pursuant to §§ 513.380–513.390, RSMo 1978. Such history may be found in the case of *Cantor v. Saitz*, 562 S.W.2d 774 (Mo.App.1978), and the reader can readily appreciate the virtual identical form and subject material of the questions in the instant case and those found in *Cantor v. Saitz, supra.*

■ In *Cantor v. Saitz, supra,* the correct rule is to be found: A court cannot compel answers to questions in derogation of the privilege unless the court can say, as a matter of law, that it would be impossible for an answer to incriminate the individual.

■ It is not required that any charge of criminal conduct be either prior to the examination or "pending" at the time of the examination, see *State ex rel. Howard v. Allison*, 431 S.W.2d 233 (Mo.App.1968). The privilege is available where an answer "may or may not criminate the witness," see

*United States v. Burr,* 25 Fed.Cas.No. 14,-692e, pages 38, 40, 1 Burr's Trial 244.

The court is not unmindful that this privilege might be asserted arbitrarily. This problem was also addressed in *Cantor v. Saitz, supra,* wherein the court declared that the witness or the counsel for the witness could be required to describe "in general terms" a rational basis upon which the witness's answer could conceivably incriminate him. Once a rational basis is foreseen by the court or pointed out by the witness, it would follow that the court would be precluded from saying, as a matter of law, that it would be impossible for the witness to incriminate himself. Such a rational basis in general terms can be found in the response to question no. 1 above.

■ Just as the court found in *Cantor v. Saitz, supra,* a distinct possibility of several areas of criminality could arise in connection with the questions propounded. These areas range from fraud to perjury to tax liability. Questions no. 1 through no. 4 and question no. 7 attempt to discover facts related to relator's income. Question no. 5 inquires about relator's checking account. Questions no. 6 and no. 8 relate to ownership of real property and personal property. Question no. 9 relates to interest in estates presently being probated.

Each of such questions has been found to require an answer which could very likely provide a link in a chain of testimony which would be necessary to convict an individual of a crime, see *Cantor v. Saitz, supra.*

This court finds no distinction of merit between the questions in the instant case and those propounded in *Cantor v. Saitz, supra,* see also *State ex rel. Howard v. Allison, supra; State ex rel. Lee v. Cavanaugh,* 419 S.W.2d 929 (Mo.App.1967); *State ex rel. North v. Kirtley,* 327 S.W.2d 166 (Mo.banc 1959); *Ex parte Meyer,* 18 S.W.2d 560 (Mo.App.1929), quashal denied *State ex rel. Strodtman v. Haid,* 325 Mo. 1137, 30 S.W.2d 466 (1930), and it cannot be said that the questions in the instant case "are by no means innocuous".

■ No court is desirous of frustrating the claim of right of judgment creditors, but when such claims are matched against basic constitutional rights, the resolution must always be in favor of those basic constitutional rights, and the judgment creditor must seek other means to secure redress.

The writ of prohibition is made absolute to all nine questions referenced herein pursuant to Mo.Const. Art. I, § 19 and the authority cited herein as interpretive thereof.

SHANGLER, PRITCHARD, SWOFFORD and KENNEDY, JJ., concur.

WASSERSTROM, C. J., concurs in part and dissents in part in separate opinion in which TURNAGE, J., concurs.

WASSERSTROM, Chief Judge, concurring in part and dissenting in part.

I agree with the majority opinion in all respects except as to the last question (listed as No. 9 in the majority opinion), which was put to the witness. With respect to that one question, in my view, the witness has not shown an adequate basis for a privilege against testifying.

The Missouri cases have utilized two different tests in determining whether a witness is entitled to the privilege against self-incrimination. Some of the cases declare that if a question submitted to a witness is innocuous on its face, then the witness must assume the burden of proving why that question would tend to incriminate him before he will be permitted to assert the privilege. *Presta v. Owsley,* 345 S.W.2d 649 (Mo.App.1961); *State ex rel. Caloia v. Weinstein,* 525 S.W.2d 779 (Mo.App.1975); *Worley v. Whaley,* 586 S.W.2d 721 (Mo.App. 1979). On the other hand, other cases have adopted and applied the rule that the witness will be permitted to claim the privilege if the court is able to perceive any rational basis upon which the witness might be subjected to prosecution if he answers. *Cantor v. Saitz,* 562 S.W.2d 774 (Mo.App.1978); *State ex rel. Lee v. Cavanaugh,* 419 S.W.2d 929 (Mo.App.1967); *State v. Joyner,* 571

S.W.2d 776 (Mo.App.1978); *State v. Brooks*, 551 S.W.2d 634 (Mo.App.1977).

*Cantor v. Saitz, supra*, (the case principally relied upon by relator and by the majority opinion), discusses these two different approaches and expresses the view that the "burden of proof" test is unduly onerous. *Cantor* nevertheless recognizes that the witness should not be left to judge the whole matter for himself. Thus the Eastern District, speaking through Judge McMillian, said, "[W]e are mindful that the privilege is, absent some check, subject to abuse by anyone wanting to evade responding to a question. Just what check should be imposed, however, is a difficult question. As discussed above, requiring the witness to explain his reasons defeats the protection of the privilege to the extent that the substance of the explanation can be used against him. On the other hand, no check on the privilege provides for arbitrary use."

It is doubtful whether our brethren on the Eastern District are wedded to the "rational basis" test as opposed to the "burden of proof" test. Thus in the most recent Missouri decision on this subject, the Eastern District, writing through Judge Clemens announced and applied the burden of proof test and held that a policeman was not privileged against making a certain report on the ground of self-incrimination, since he "failed to make the requisite showing that the requested report would incriminate him." *Worley v. Whaley, supra.*

For the purposes of the present case, it is unnecessary to decide which of the two above tests is the more appropriate. Even applying the more lenient "rational basis" test, the witness here should be required to answer Question No. 9, which was: "Q. Mr. Hudson, do you have any interest in any estates that are presently being probated, either as a devisee or legatee or heir?" I, for one, can perceive no rational basis upon which an answer to that question would tend to incriminate the witness.

*Cantor* recognizes that in a situation such as this, an obligation can be cast upon the witness to make some showing as to why he should be accorded the privilege. In that

respect the court stated: "After considering carefully the interests involved, we believe that the privilege is not eroded by requiring the witness or his counsel to describe, in general terms, a rational basis upon which his answer could conceivably incriminate him."

Pursuant to that declaration, the trial court here did call upon defendant to describe in a general way such a rational basis, and in response the witness's lawyer stated:

"Your Honor, I would say to the Court that the income taxes Mr. Hudson may be liable for on any income conceivably could represent some trouble for him in the future. As far as I know, the business he was in before with the restaurant has a high cash flow and is susceptible to manipulation. In fact, Tom Dasse testified earlier about the manipulation in the restaurant business, and with any sort of income he has now I would say the same applies. Could be trouble with income tax in the future."

And as to Question No. 9 now in issue, the witness's counsel explained as the basis for the witness's refusal to answer, "It would be the same reason, Your Honor."

The reason so given by counsel can have no application to Question No. 9. The funds in a probate estate accumulated by some decedent other than this witness would not likely expose this witness to any charge that he had "skimmed" money out of the cash flow of his restaurant.

The majority opinion indicates that the questions in the present case are all "virtually identical" to questions asked in *Cantor*. That similarity does exist concerning the first eight questions asked here. It does not exist as to Question No. 9.

There were only two questions asked in *Cantor* which are in any way close to the present Question No. 9. The first of the questions in *Cantor* was as follows: "Do you have any interest under a will or trust?" That question differs from Question No. 9 here in that the *Cantor* question included inquiry as to any trust. A trust

could have been created by the witness himself for his own benefit and therefore would be of the same character as any of his other assets. Indeed, that is exactly the way in which the *Cantor* opinion treated that question. In contrast, Question No. 9 in our case does not refer to any trust and relates only to probate estates which can only mean a decedent's estate created by someone else.

The only other question in *Cantor* having any similarity is the following: "Q: Have you received any money recently under any will or inheritance?" This question is different from our Question No. 9 for the reason that the *Cantor* question relates to money already distributed, whereas the question in our case relates to funds still under administration.

As just demonstrated, the witness should not be accorded the privilege against self-incrimination even under the lenient *Cantor* approach. However, I should not leave this subject without saying candidly that I personally prefer the burden of proof test which was adopted by this court on a well-considered opinion in *Presta v. Owsley, supra.* As stated by Judge Hunter in that opinion, however, the witness should have the right and opportunity to show how the answer would endanger him. I would join the majority in making the writ absolute as to all questions except Question No. 9; and as to that question, I would quash the writ with instruction to the trial court to hold a hearing in which the witness will be allowed to make any further showing he desires as to how an answer to this No. 9 would incriminate him.