**STATE of Missouri ex rel. Joseph D. NEWMAN, Relator,**

v.

**Honorable John ANDERSON, Judge of Division III of the Circuit Court of Jefferson County, Respondent.**

No. 42079.

Missouri Court of Appeals,
Eastern District,
Division Four.

Sept. 30, 1980.

Susman, Schermer, Rimmel & Parker by Morton I. Golder and Barbara L. Beran, St. Louis, for relator.

Dana A. Hockensmith, Hillsboro, for respondent.

SATZ, Judge.

Relator, Joseph D. Newman, sought a writ of prohibition to prevent the respondent circuit judge from compelling him to answer certain questions in an examination of judgment debtor proceeding. We issued our preliminary writ and now, after briefing and oral argument, we make our writ absolute.

The State Bank of DeSoto (bank) obtained a money judgment against relator. Subsequently, in aid of execution of the judgment, the bank secured a court order for relator to appear for an examination of judgment debtor. At the outset of the examination, relator invoked his privilege against self–incrimination guaranteed by § 19, Article I of the Missouri Constitution and the Fifth Amendment of the United States Constitution and refused to answer certain of the bank's questions. In particular, relator refused to answer the question:

"Is there any real property of record title in your name in the State of Missouri?"

The bank requested the respondent judge to compel relator to answer and pointed out that the question did not require relator to answer whether he owned any real property but rather whether title to any property was recorded in his name. The bank also noted that this title information would be a public record and, therefore, according to the bank's reasoning, the answer to the question could not possibly incriminate relator. In response to the bank's argument, relator's counsel indicated the answer might incriminate relator because of "possible fraud". Apparently, the respondent judge was persuaded by the bank's reasoning, and he directed relator to answer the question or be committed to jail. Relator's counsel indicated he might want to seek a writ to stay the respondent judge's order. In response, the judge stated that relator would be committed to jail and, then, relator's counsel could process his writ. Relator's counsel replied that perhaps other questions could be asked and "maybe we can resolve this". The bank then asked relator to disclose, and he did disclose, those trusts for which he was a "record trustee in the State of Missouri". After these disclosures were made, the bank again asked relator:

"Is there any real property of record title in your name in the State of Missouri?"

Relator answered:

"Your Honor, I honestly do not know."

The bank requested a continuance and also requested an order to compel relator to use the time during the continuance to determine the "correct answer" to the bank's question. In addition, the bank's counsel stated:

"And, I would further like to supplement or amend the question to make it clear that we're asking—when I say 'title, record title in his name', I'm referring not only to title which may be solely in his name but title which may be in his name as joint tenants or tenants in common or tenants by entirety with other persons."

Relator again invoked his privilege against self–incrimination and refused to answer the question. The respondent judge continued the examination, ordered the relator to answer the question on or before the date of the next hearing and observed that relator could seek a writ during the continuance, if he wished. Relator then sought the present writ.

■ Our courts have long recognized that the privilege against self–incrimination is available to a judgment debtor in an examination of judgment debtor proceeding. *State ex rel. North v. Kirtley*, 327 S.W.2d 166 (Mo. banc 1959); *State ex rel. Howard v. Allison*, 431 S.W.2d 233, 235 (Mo. App.1968). Since this examination is a non–criminal proceeding, the debtor has no blanket privilege against self–incrimination. The debtor must specifically claim the privilege on a particular question, and the court must determine whether the specific claim is justified. This determination creates a perplexing problem. The privilege not only extends to answers which would in themselves support a conviction of a crime but likewise embraces those answers which would simply furnish a link in

the chain of evidence needed to prosecute the debtor for a crime. *State ex rel. Coloia v. Weinstein,* 525 S.W.2d 779, 780 (Mo.App. 1979); *State ex rel. Howard v. Allison, supra* at 237. To require the debtor to explain in detail why his answer might be a link in a chain of incriminating evidence would, in effect, require the debtor to surrender the very protection which the privilege is designed to guarantee. On the other hand, to permit the debtor to remain silent upon the mere declaration that his answer might tend to incriminate him, obviously, might subject the privilege to unwarranted abuse. In *Cantor v. Saitz,* 562 S.W.2d 774 (Mo.App.1978), we discussed the various attempts to develop rules and guidelines to resolve this dilemma. One rule—the basic rule—remained constant: "The court cannot compel the [debtor] to answer unless it would be impossible for the [debtor] to incriminate himself." *Cantor v. Saitz, supra* at 778–779; *see, e.g., Ex parte Gauss,* 122 S.W. 741, 742 (Mo.1909).

■ In practice, the application of this rule quite often depends upon the setting or context in which a particular question is asked. If an otherwise innocuous question is asked in a setting or context which suggests a real hazard of incrimination, the court obviously cannot say, as a matter of law, that incrimination is impossible and, therefore, the court cannot compel the debtor to answer the question nor sensibly compel him to explain the self–evident reasons for invoking his privilege against self–incrimination. *State ex rel. Strodtman v.*

*Haid,* 30 S.W.2d 466, 467 (Mo.1930). *See also Presta v. Owsley,* 345 S.W.2d 649 (Mo. 1901). However, if the question remains innocuous even when viewed in its setting and context, the court can require the debtor "to describe, in general terms, a rational basis upon which his answers could conceivably incriminate him". *Cantor v. Saitz, supra* at 778. If a rational basis for incrimination is provided, the court obviously cannot say, as a matter of law, that incrimination is impossible.[1] *Cantor v. Saitz, supra.*

Relator argues on appeal, as he did at trial, that a rational basis for his silence was demonstrated by his counsel's statement that his answer would expose him to possible "criminal penalties for fraud". On appeal, relator states the crime contemplated by his assertion of fraud was the possible concealment of his assets from his creditors.[2] In addition, relator now suggests other possible reasons his answer would tend to incriminate him. The reasons range from "income tax evasion" to "forgery".[3]

Respondent first counters that in *Cantor v. Saitz, supra,* the debtor was required to answer a question having the same legal effect as the questions in issue here. More specifically, respondent points to the question in *Cantor* in which the debtor was asked whether there were any legal actions pending against him. That question, respondent contends, has the same legal effect as the bank's present question whether relator held record title to property, because "[b]oth [questions] relate to matters of public record" and both "may be answered 'yes'

---

1. In *State ex rel. Shapiro v. Cloyd,* No. 42243, (Mo. App. E.D. Sept. 16, 1980), this Court requested the Supreme Court to reexamine this law defining the extent of a debtor's privilege against self–incrimination in an examination of judgment debtor.

2. Relator cites no case law or statute which defines "concealment of assets from creditors" as either a common law or statutory crime. Under former § 561.550 RSMo 1969, a conveyance of property made with the intent to hinder, delay or defraud creditors was a statutory crime, and, to the extent a concealment is achieved by such a conveyance, the concealment can be construed to be a crime. Section 561.550 RSMo 1969, was repealed by our new Criminal Code which was in effect at the time

of the hearing below. The Code apparently provides no exact equivalent for former § 561.-550. *Compare* § 570.090 RSMo 1978 and § 570.180 RSMo 1978.

3. "Income tax evasion (Were unreported profits realized from these lands?), perjury, (Has relator, in the past, under oath, denied owning an interest in such lands?), accessory to any number of crimes, (Are the people with whom Relator may own this realty involved in crimes with which Relator may be connected?), theft, (How did Relator get title to these lands and how did Relator pay for these lands?), forgery, (Have any of the names or signatures on these recorded documents been forged or falsified?)."

or 'no' ", without requiring the debtor "to state supporting facts or conclusions". Since the two questions have the same legal effect, respondent reasons, relator here, like the debtor in *Cantor*, should be required to answer. We disagree.

■ Respondent interprets and misapplies the ruling in *Cantor v. Saitz, supra.* In *Cantor*, we did not require the debtor to answer whether any legal actions were pending against him. Rather, we considered that question to be innocuous, and, as a condition to the debtor remaining silent, we required him to rationally explain, in general terms, the possible incrimination perceived by him. *Cantor v. Saitz, supra* at 779. Furthermore, the privilege against self–incrimination protects a debtor from personally supplying the possible incriminating evidence. Thus, contrary to respondent's bald conclusion, the fact that the evidence sought may be part of the public record and may be supplied by a simple "yes" or "no" does not obviate relator's protection against being compelled to provide this information by his testimony.

■ Respondent also argues that relator's mere assertion of "possible fraud", without further explanation, does not provide a rational basis for possible incrimination. Under the present status of the law, we cannot agree.

An examination of a judgment debtor may be initiated on either of two grounds: a showing there is reason to believe the debtor (1) "has property subject to execution" or (2) "has conveyed or attempted to convey his property, with a design to defraud, hinder or delay his creditors". Section 513.385 RSMo 1978. The latter ground, fraudulent conveyance, was a misdemeanor under former § 561.550 RSMo 1969. Thus, when an examination of a judgment debtor was initiated on this ground, the setting was a reasonable showing of fraudulent conveyance and, in this setting, questions put to the debtor about his ownership of property suggested a real hazard of self–incrimination. *State ex rel. Strodtman v. Haid*, 30 S.W.2d 466, 467 (Mo.1930). Admittedly, in the instant case, respondent did not initiate the examination on the ground of fraudulent conveyance but, instead, initiated it on the ground that relator had property subject to execution. Arguably, there is nothing in this latter setting which suggests that the bank's question about property titled in relator's name subjected relator to a real hazard of incrimination. The record discloses nothing to link relator with any criminal investigation or proceeding. Relator has made no showing that the purpose of this examination was anything other than an ordinary search for his property in order to satisfy the judgment against him. Furthermore, we do not perceive, in the statutory provisions for examination of a judgment debtor, any of the inherent dangers of self–incrimination which may be present in other statutory disclosure schemes. *Compare Haynes v. United States*, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968); *Grosso v. United States*, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968); *Marchetti v. United States*, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968). Thus, insofar as the setting is concerned, the bank's questions appear to be innocuous and, in this setting, it would seem questionable that relator's unadorned statement of "possible fraud" could sensibly make those questions anymore menacing. Without further explication, there is no more reason or logic to view this statement as a rational explanation of possible incrimination than there is to view it as an irrational conclusion to that effect.

However, our courts are extremely sensitive in perceiving the possibilities of self–incrimination whenever the privilege is raised, *State ex rel. Howard v. Allison*, 431 S.W.2d 233, 237 (Mo.App.1968) (examination of judgment debtor); *see also, State ex rel. Coloia v. Weinstein*, 525 S.W.2d 779, 781 (Mo.App.1975) (civil action to set aside fraudulent conveyance) and *Presta v. Owsley, supra* at 652 (grand jury investigation) and we perceive possible incrimination on limited explanations. *Cantor v. Saitz, supra; State ex rel. Howard v. Allison, supra; State ex rel. Lee v. Cavanaugh*, 419 S.W.2d 929, 934 (Mo.App.1967); *State ex rel. Hud-*

*son v. Webber*, 600 S.W.2d 691 (Mo.App. 1980). For example, in the *Allison* case, the examination was initiated on the showing that the debtor had property subject to execution rather than a showing of fraudulent conveyance and, at trial, the debtor offered no explanation for invoking his privilege against self–incrimination and for refusing to answer questions about his ownership of property. On appeal, the debtor suggested his answers about ownership might subject him to incrimination because of possible "fraudulent conveyances" and "income tax violation". This limited statement was sufficient for the court to perceive "the distinct possibility that answers to the [questions about ownership of property] might furnish information constituting a link in a chain of evidence leading to a criminal conviction in either of the two suggested areas". *State ex rel. Howard v. Allison, supra* at 238. The sensitivity of this perception has not changed and the mere statement of "fraud", "income tax violation", "perjury" have been considered explicit enough to serve as a rational explanation for a debtor to refuse to answer questions concerning his ownership of property. *See, e.g., Cantor v. Saitz, supra; see also, State ex rel. Hudson v. Webber*, 600 S.W.2d 691 *supra*. Apparently, the term or word itself is sufficient to trigger a programmed judicial perception of the explicit evidentiary links leading from the requested answer to the possible incrimination. There is little or no difference between relator's statement of "possible fraud" here and the equally limited terms and words accepted as a "rational basis" for possible incrimination in the foregoing cases. Moreover, if relator's explanation is significantly less explicit than previously accepted explanations and, therefore, legally insufficient, relator has rectified that deficiency by now suggesting to this court a litany of explicit reasons for his invocation of his privilege against self–incrimination: "Income tax evasion (Were unreported profits realized from these lands?), perjury, (Has relator, in the past, under oath, denied owning an in-terest in such lands?), etc.[4] Obviously, these reasons were of no help to the respondent judge and, perhaps, all parties would have been better served if relator would have made his suggestions below. Nonetheless, under Missouri law, "this court . . . in this proceeding [is also] enjoined to 'be sensitive to the circumstances existing and perceptive in viewing the possibilities of incrimination' ". *State ex rel Howard v. Allison, supra* at 237, and we perceive those reasons relator now suggests to us to be rational explanations of his possible incrimination. *See Cantor v. Saitz, supra; see also, State ex rel. Hudson v. Webber, supra.*

Respondent also maintains that, if relator's explanations justify a refusal to answer, they justify only a refusal by relator to answer questions concerning his ownership of property. However, respondent argues, the bank's questions were not whether relator owned property but, rather, whether any property was of record title in his name. Respondent does not explain and we find no reason why the distinction between "ownership" and "record title" is meaningful insofar as relator's explanations are concerned. Relator has detailed the manner in which disclosure of ownership might lead to incrimination. Title is merely documentary evidence of ownership and, thus, disclosure of title necessarily leads to a disclosure of ownership. Therefore, a disclosure of title might lead to incrimination. The fact that the title might be public record does not disturb this logic, for, as previously demonstrated, relator's privilege against self–incrimination protects him from giving testimonial evidence which might be incriminating regardless of the source or location of the information, and respondent has not demonstrated why relator's explanations are obviated or refuted by a previous public disclosure of title information reflecting relator's ownership.

Finally, respondent contends that relator waived his privilege against self–incrimination by answering "I honestly do not know", the second time he was asked the question "Is there any property of record

4. *See, Fn. 3, supra.*

title in your name in the State of Missouri?" Respondent argues that the bank's amendment or supplement to this question did not change the question. Rather, respondent asserts, the amended or supplemented question was simply the same question stated differently and, therefore, respondent reasons, relator could not re–assert his previously waived privilege. We disagree.

First, we find the bank's amended question was a different question than its two previously asked questions. After twice asking the identical question: "Is there any real property of record title in your name in the State of Missouri?", the bank's counsel introduced his third question seeking title information by stating "And, I would further like to supplement or amend the question . . .". This introductory language not only connotes an addition to the original inquiry but it also connotes a reformation of its meaning. In essence, the bank was changing its question to include an additional and different inquiry. This conclusion is strengthened by the structure of the questions. The initial question is general: "Is there any real property of record title in your name?" The amended or supplemental question is specific: "Is there any real property of record title in your name jointly, with others?" The latter question is a derivative inquiry for which the former question merely laid a foundation. In addition, the substance of the bank's amendment makes the amended question qualitatively different. Seeking information about title recorded in relator's name alone, the first inquiry, and seeking information about title recorded in relator's name, jointly, with others, the second inquiry, are two different inquiries, requiring different answers with different legal effects. Thus, the bank's amended or supplemental question was a distinct and new inquiry against which relator could assert his privilege.

Second, even if we assume the bank's amended inquiry substantively sought the same information as its original inquiry, we would not find that relator waived his privilege. Whatever respondent maintains about the identity of these inquiries, the fact remains that the bank amended its first inquiry to articulate its inquiry more explicitly and to define the extent of its inquiry more precisely. By amending its original inquiry in this manner, the bank implicitly admitted the inquiry was equivocal and imprecise. More important, it is clear from the record that relator appreciated this equivocation and imprecision and regarded the amended inquiry as probing for a response not requested by the initial inquiry. He answered the first inquiry and then asserted his privilege to the inquiry as amended. Relator had the same difficulty the bank did in understanding the exact scope and breadth of the language used in the first question. When relator understood the exact nature of the inquiry, he asserted his privilege. We indulge every reasonable presumption against a waiver of the privilege against self–incrimination and we do not declare a waiver unless it was intentionally and knowingly made. *E.g., State ex rel. Lee v. Cavanaugh*, 419 S.W.2d 929, 936 (Mo.App.1967). With the acknowledged imprecision in the bank's initial inquiry, we cannot say that relator knowingly and intentionally waived his privilege by his response to that inquiry.

Our writ is made absolute.

SMITH, P. J., and SIMON, J., concur.